**In re Charles R. TUMA and Jolene L. Tuma, Debtors.**

**Charles R. TUMA and Jolene L. Tuma, Appellants,**

v.

**FIRSTMARK LEASING CORPORATION, Appellee.**

**No. 89–35089.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 9, 1990.

Memorandum June 28, 1990.

Order and Opinion Oct. 2, 1990.

Brent T. Robinson, Ling, Nielsen & Robinson, Rupert, Idaho, for appellants.

Tom N. Ambrose, Lindsey, Hart, Neil & Weigler, Boise, Idaho, for appellee.

Before WALLACE, FERGUSON and BRUNETTI, Circuit Judges.

## ORDER

The memorandum disposition filed June 28, 1990, is redesignated as an authored opinion by Judge Ferguson.

## OPINION

FERGUSON, Circuit Judge:

Charles and Jolene Tuma appeal a decision of the bankruptcy court, affirmed by the Bankruptcy Appellate Panel, which allowed their major creditor to elect to have its entire claim treated as secured under 11 U.S.C. 1111(b). We affirm.

## BACKGROUND

Charles and Jolene Tuma ["the Tumas"] are the major stockholders of Sawtooth Radio corporation ["Sawtooth"], a closely held corporation. Sawtooth owed approximately $1,450,000 to Firstmark Leasing Corporation ["Firstmark"], for which Firstmark held a security interest in all of Sawtooth's assets. In addition, as part of the security for this money, the Tumas had personally guaranteed the debt and pledged their Sawtooth stock as collateral. In February 1986, Sawtooth filed a Chapter 11 bankruptcy; the Tumas filed under Chapter 11, separately, on the same day.

The Sawtooth bankruptcy plan was confirmed over Firstmark's objections in October, 1986, and affirmed on appeal, first by the Bankruptcy Appellate Panel [BAP], and then in July 1989 in an unpublished disposi-

tion of this court. Under the Sawtooth plan, Firstmark received $1.2 million on their secured claim, and an additional $250,-000 on their unsecured claim, to be paid over 20 years. Certain other creditors received minor sums. The Tumas, as creditors of Sawtooth, retained their stock in Sawtooth in consideration for money they had loaned the corporation and for their personal payment of the corporation's debts.

Sawtooth still held the Tumas' personal guarantee of the debt and the pledge of their stock as collateral. In the Tumas' bankruptcy proceeding, Firstmark moved to elect treatment of this entire claim as secured under § 1111(b) of the Code. The Tumas objected on the grounds that the stock was of "inconsequential value" and therefore ineligible for this election under § 1111(b)(1)(B)(i). The bankruptcy judge issued a brief order, noting that the stock provided a controlling interest in Sawtooth, which appeared on its way to a successful reorganization, and stating that "[t]his fact alone militates against a finding of inconsequential value."

The Tumas appealed to the BAP, arguing that the stock was of inconsequential value and that Firstmark's interest in the stock had been extinguished through the Sawtooth bankruptcy. The BAP held that the Sawtooth bankruptcy had not extinguished Firstmark's lien on the stock. In the absence of evidence showing that the judge had been clearly erroneous in determining the stock was of more than inconsequential value, the BAP affirmed the order permitting Firstmark's § 1111(b) election.

## STANDARD OF REVIEW

The bankruptcy court's findings of fact are reviewed under the "clearly erroneous" standard. *In re Comer,* 723 F.2d 737, 739 (9th Cir.1984). Its conclusions of law are reviewed de novo. *Id.*

## I. FIRSTMARK'S INTEREST IN THE STOCK

■ The Tumas argue that Firstmark's interest in the stock was extinguished by the confirmation of the Sawtooth bankrupt-

cy. The bankruptcy judge did not deal with this argument explicitly, though the transcript shows that the debtors raised it on oral argument. However, his decision to allow the election revealed that he found Firstmark's interest had not been extinguished. The BAP found explicitly that the Tumas had retained their interest in the stock subject to Firstmark's lien.

The Tumas make two arguments for the proposition that Firstmark's lien had been extinguished, both of which confuse their role in the Sawtooth bankruptcy with their role in their own bankruptcy. First, the Tumas cite cases holding that, upon confirmation, the Chapter 11 estate ceases to exist; they argue that therefore the stock they received after the Sawtooth bankruptcy was stock in a new entity. However, the cited cases are concerned with the impact of confirmation of a plan on the relationship between the creditors and debtors. These cases do not support the notion that a different corporate entity replaced the first. For example, in *In re Air Center,* 48 B.R. 693 (Bankr.W.D.Okla.1985), the confirmed plan called for a third party to contribute money to pay the corporation's debts. When the third party failed to make the payments, the court held that the recourse of those who did not receive their money lay against the reorganized estate and the third party who had failed to pay; they could not pursue the secured creditor who had received most under the plan.

In the Sawtooth bankruptcy, the Tumas were more like the "third party" than the debtors in *Air Center.* As the BAP held, the Sawtooth plan provided the Tumas could "retain their stock" with no indication that the stock had any different attributes than it did before confirmation of the plan. They retained the stock in consideration for their payment of the corporation's debts; they are now, in their own bankruptcy, attempting to deal with the creditor who moves against them.

Second, the Tumas cite cases stating that upon confirmation of a plan, the property of the estate revests in the bankruptcy debtor subject only to liens specified in the

plan. Most of these cases are not on point. Their best authority is a bankruptcy case which stated that property revested in the debtor when a creditor had not maintained its perfected security interest. *In re Nardulli & Sons Co., Inc.*, 66 B.R. 871, 881 (Bankr.W.D.Pa.1986). The district court later held that the creditor had in fact maintained its security interest; the court of appeals affirmed without deciding whether divestment of a lien by a Chapter 11 plan would be valid where divestment was not sought in a separate judicial proceeding. *General Elec. Credit Corp. v. Nardulli & Sons, Inc.*, 836 F.2d 184, 189 n. 8 (3rd Cir.1988).

This proposition does not help the Tumas either. The debtor in the confirmed plan was *Sawtooth*, not the Tumas. The stock went to the Tumas as creditors, not debtors, in the Sawtooth proceeding, and there is no indication that Firstmark had not maintained their security interest in stock held by the Tumas. In fact, the Tumas received the stock in consideration for the personal responsibility they had assumed for Sawtooth's debts—the personal liabilities which are the subject of the instant proceeding. Appellants do not show why, when Sawtooth's assets revested in Sawtooth, there should be any impact on Firstmark's interest in the Tumas' stock.

## II. THE VALUE OF THE STOCK

■ The determination of value is a factual finding, *Ahmanson Foundation v. United States*, 674 F.2d 761, 769 (9th Cir. 1981); *Hamburger v. Commissioner (In re Nathan's Estate)*, 166 F.2d 422, 425 (9th Cir.1948). It is reviewed under the clearly erroneous standard. *See, e.g., Valley Nat. Bank of Ariz. v. Trustee, Etc.*, 609 F.2d 1274, 1278 (9th Cir.1979), *cert. denied sub nom. Woolsey v. Trustees for Westgate–California Corp.*, 444 U.S. 1015, 100 S.Ct. 666, 62 L.Ed.2d 645 (1980). This court does not apply the deferential, "clearly erroneous" standard when an error of law has been made in the finding. *Lama v. Union Bank*, 315 F.2d 750, 752 (9th Cir.1963).

■ Section 1111(b) permits an undersecured creditor to elect to have its entire claim treated as secured. However, under § 1111(b)(1)(B)(i), a creditor may not elect to have its claims treated as secured if "the interest on account of such claims of the holders of such claims in such property is of inconsequential value." The Tumas point to the confirmed Sawtooth plan, in which payments due are larger than the corporation's value, and argue that the record as supplemented on appeal by these materials demonstrates that the stock has no value at all.

We may take judicial notice of bankruptcy records in the underlying proceeding, *In re E.R. Fegert, Inc.*, 887 F.2d 955, 957–58 (9th Cir.1989); however, the Tumas seek reliance on a valuation made in a *different* proceeding—the Sawtooth bankruptcy. Further, the Tumas overlook the fact that, through their control of Sawtooth, they continue to receive a substantial salary as managers. Although the briefs reveal that there are many different methods of determining value, the Tumas do not show that the determination made by the bankruptcy judge was clearly erroneous.

The Tumas argue further that the judge committed an error of law by evaluating the stock only for its future or eventual value. In § 1111(b), Congress sought to give creditors the opportunity to capture future appreciation in the value of their collateral. *See* 124 Cong.Rec. 32392, 32408 (Sept. 28, 1978) (Statement of Rep. Edwards). The general viewpoint of the bankruptcy judge, in looking toward the future functioning of the corporation, is entirely appropriate. He found their present control of a functioning corporation to have more than inconsequential value. The statute does not require him to state this value but only to determine whether it is more than inconsequential. Since his finding was not clearly erroneous, the plain language of the statute entitles Firstmark to make the election.

The judgment of the bankruptcy court is AFFIRMED.