**In re DEFENDER DRUG STORES, INC., an Arizona corporation, Debtor.**

**In re SUPERX OF ARIZONA, GEORGIA AND ALABAMA CORPORATION, a Delaware corporation, Debtor.**

**In re MEDICARE–GLASER CORPORATION, a Missouri corporation, Debtor.**

**Bankruptcy Nos. 90–04885 PHX–RGM, through 90–04887 PHX–RGM. Adv. No. 91–128–PHX–RGM.**

United States Bankruptcy Court, D. Arizona.

March 14, 1991.

Judith M. Dworkin, Meyer, Hendricks, Victor, Osborn & Malendon, Phoenix, Ariz., for debtors.

Lloyd A. Palans, Bryan, Cave, McPheeters & Roberts, St. Louis, Mo., for Landmark Commercial Corp.

Robert C. Houser, Brown & Bain, Phoenix, Ariz., for Resolution Trust Corp. Conservator for Lincoln Sav. & Loan Ass'n.

Susan M. Freeman, Lewis and Roca, Phoenix, Ariz., for Unsecured Creditors Committee.

Paul Randolph, Office of the U.S. Trustee, Phoenix, Ariz.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW DENYING THE RTC'S MOTION TO DISALLOW PAYMENT OF CONTINGENT ENHANCEMENT FEE TO LANDMARK COMMERCIAL CORPORATION

ROBERT G. MOOREMAN, Bankruptcy Judge.

At Phoenix, in this District, this matter having come before the Court for a hearing on March 5, 1991, on a motion filed by the Resolution Trust Corporation (the "RTC"), as conservator for Lincoln Savings & Loan Association, F.A., to disallow a 10% contingent enhancement fee payable to Landmark Commercial Corporation ("Landmark") pursuant to a financing agreement previously approved by this Court, the Unsecured Creditors' Committee (the "Committee") having joined in the RTC's motion, the parties having submitted and the Court having read written briefs with respect to the RTC's motion, the Court having carefully considered the facts, the record in these proceedings, the arguments of counsel, and being otherwise fully advised in the premises, for good cause shown, the Court hereby enters the following findings of fact and conclusions of law pursuant to Rule 7052 of the Bankruptcy Rules and Rule 52(a) of the Federal Rules of Civil Procedure:

### Findings of Fact

1. On May 10, 1990, Medicare–Glaser Corporation ("Medicare–Glaser") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Pursuant to 11 U.S.C. §§ 1107 and 1108, Medicare–Glaser continued to operate its chain of retail drug and pharmaceutical stores as a debtor-in-possession.

2. On May 11, 1990, the Court granted Medicare–Glaser's motion to authorize post-petition financing with Landmark, and entered an emergency order authorizing Medicare–Glaser to obtain post-petition secured credit from Landmark. The Court entered a final order on July 18, 1990, approving Medicare–Glaser's post-petition financing with Landmark.

3. Medicare–Glaser's post-petition financing with Landmark terminated by its terms on November 10, 1990, at 5:00 p.m. C.S.T. and could not be extended unless agreed to in writing by Landmark. Prior to the November 10, 1990, termination date, Landmark notified Medicare–Glaser that it was in default of its obligations to

Landmark and that the post-petition financing would not be extended beyond the November 10, 1990, termination date. In addition, Landmark also advised Medicare–Glaser of its intent not to declare a default prior to the November 10, 1990, termination date, although grounds for a declaration of defaults existed.

4. Shortly before the scheduled termination of the post-petition financing (and in spite of the termination of the financing under a final order of this Court), the RTC nevertheless moved the Court to extend the November 10, 1990, termination date of the post-petition financing for a period of time to hold an auction sale of the Medicare–Glaser business or assets, thereby exposing Medicare–Glaser's business or assets to "market" or "going concern" bids. The Committee joined in the RTC's motion.

5. On November 9, 1990, Medicare–Glaser moved the Court to extend the termination date of the post-petition financing to create the potential opportunity for a sale under 11 U.S.C. § 363 to realize "going concern" values and obtain "market" bids. Landmark agreed to extend the termination date of the post-petition financing, but *only* upon the Court's authorization of certain specified conditions, including approval of the contingent Enhancement Fee (as defined below) as part of the extended financing.

6. Recognizing that Medicare–Glaser's continuing operating losses would result in an erosion of Landmark's collateral base, collateral mix and liquidation values, Landmark agreed to extend the termination date of the post-petition financing subject to specified credit "enhancers" being furnished by Medicare–Glaser to Landmark. One such "enhancer" called for a letter of credit to be posted for Landmark's benefit, in exchange for which Landmark would extend the post-petition financing to March 10, 1991.

7. In the event a letter of credit could not be furnished, Landmark agreed to extend the then-matured financing an additional 30 days so that the business and assets of Medicare–Glaser could be sold at auction under 11 U.S.C. § 363 as requested by the RTC and the Committee. Under this contingency, and as an inducement for Landmark to extend the post-petition financing beyond the November 10, 1990, termination date, Medicare–Glaser agreed to pay Landmark an additional payment equal to 10% of the gross consideration received by Medicare–Glaser for its business or assets in excess of the outstanding Landmark indebtedness (the "Enhancement Fee" under the "Agreement"). The Agreement specified that the Enhancement Fee, if any, would constitute part of the Landmark indebtedness and would be paid in cash concurrent with payment in full of the Landmark indebtedness. If the consideration received by Medicare–Glaser at an auction proved to be less than the Landmark indebtedness, however, Landmark would receive no Enhancement Fee and would look to its collateral and its rights for payment under the Court's orders approving the post-petition financing.

8. Medicare–Glaser's agreement with Landmark to pay the Enhancement Fee as an inducement for Landmark to extend the financing beyond the November 10, 1990, termination date was submitted to the Court for approval on November 9, 1990.

9. On November 13, 1990, after appropriate notice and a hearing (in which both the RTC and the Committee participated), the Court entered a final order (the "Extended Financing Order") approving the Enhancement Fee as reasonable under the circumstances. The post-petition financing extension provided an opportunity for shared appreciation in the value of the estate, to the benefit of all creditors and parties-in-interest.

10. After careful consideration of the evidence presented to the Court at the November 13, 1990, hearing, and having had the opportunity to consider the testimony and judge the credibility of the witness (Rick J. Kratz) examined at that hearing, and affording appropriate weight to all such evidence, the Court made the following findings in the Extended Financing Order, which findings are hereby reaffirmed and incorporated herein by reference:

a. Landmark was willing to extend the financing beyond its original maturity date only upon the express condition that, *inter alia*, Landmark have the right to receive the Enhancement Fee in the event Medicare–Glaser's business or assets were sold under 11 U.S.C. § 363.

b. The extension of the post-petition financing upon the terms contained in the Extended Financing Order was fair, reasonable, necessary and in the best interests of the estate to avoid immediate liquidation of Medicare–Glaser's assets on November 10, 1990, to sustain and promote the potential sale of Medicare–Glaser's business for a limited period, and to enhance the prospect of attaining any potential additional value from Medicare–Glaser's property.

c. Medicare–Glaser was unable otherwise to obtain sufficient credit on terms equal to or more favorable than the terms set forth in the Extended Financing Order.

d. The negotiations concerning the extension of the post-petition financing upon the terms contained in the Extended Financing Order were vigorous, arm's length, and fully disclosed to the Court and to other parties-in-interest.

e. Approval of the extension of the post-petition financing under the terms provided for in the Extended Financing Order was fair, reasonable, in the best interests of the estate, and necessary to preserve and maintain any potential going concern value of Medicare–Glaser.

f. The ability of Medicare–Glaser to finance its operations and the availability to Medicare–Glaser of sufficient working capital and liquidity through the incurrence of new indebtedness and other financing accommodations was vital to Medicare–Glaser and its estate having any opportunity to realize potential values in excess of liquidation.

g. Absent entry of the Extended Financing Order, the Landmark indebtedness would have matured and Medicare–Glaser's operations would have been subject to termination, resulting in immediate and irreparable harm to Medicare–Glaser's estate and its creditors.

h. The post-petition financing and the extension upon the terms provided in the Extended Financing Order were negotiated in good faith and at arm's length between Medicare–Glaser and Landmark and such credit was extended in good faith by Landmark as that term is used in 11 U.S.C. § 364(e).

11. In light of the Debtor's failing business, the imminent liquidation of Medicare–Glaser's assets absent entry of the Extended Financing Order, and in light of the opportunity for the Debtor to realize "going concern" or "market" values for its business and assets through an orderly auction as a direct result of the Court's approval of the contingent Enhancement Fee and entry of the Extended Financing Order, the interests of secured creditors (including the RTC) with liens subordinate to the first lien of Landmark were adequately protected.

12. The effect of the Extended Financing Order afforded the RTC or Medicare–Glaser (through a substitute lender) the opportunity or right to pay off the Landmark debt at par (without payment of any portion of the Enhancement Fee) at any time prior to an auction sale of Medicare–Glaser's assets. Neither the RTC nor Medicare–Glaser exercised that right or took advantage of that opportunity.

13. The Extended Financing Order also specified that "[i]f any or all of the provisions of this Order are hereby modified, vacated or reversed by subsequent Order of this or any other Court, such reversal, modification or vacation shall not affect the validity of" the Extended Financing Order.

14. Rather than appeal the Extended Financing Order, the RTC and the Committee subsequently entered into a Stipulation with Landmark, which was approved by the Court on November 15, 1990, which permitted the RTC or the Committee to challenge the validity of the Enhancement Fee *only* on the *limited ground* of the Court's "authority" under the Bankruptcy Code to approve the contingent Enhancement Fee.

15. Subsequent to the entry of the Extended Financing Order, no letter of credit

or other "credit enhancer" was provided. In reliance upon the Extended Financing Order, Landmark extended the maturity of the post-petition financing to December 19, 1990, at which time an auction sale of Medicare–Glaser's assets took place.

16. At the auction, Walgreens Co. purchased the inventory, furniture, fixtures, equipment and four store leases of Medicare–Glaser for 110% of net salable inventory. While initially projected to bring approximately $12.2 million, Medicare–Glaser ultimately realized gross consideration of $8,836,505 from the sale, which (when added to other sales of Medicare–Glaser's assets at auction) triggered payment of a $372,609 Enhancement Fee to Landmark.

17. In light of, *inter alia,* Medicare–Glaser's failing business, continuing losses, and incomplete physical inventories, and in the absence of the RTC or Medicare–Glaser exercising its right or taking advantage of the opportunity to pay off the Landmark indebtedness prior to the auction sale through payment of the debt, replacement financing or otherwise, the payment of the Enhancement Fee was appropriate for the risk being borne by Landmark. The Enhancement Fee was not a penalty or otherwise an unreasonable payment and the provision of the Enhancement Fee in the Extended Financing Order was a fair, reasonable and appropriate cost of extending the post-petition financing beyond its maturity date.

18. To the extent any of the following conclusions of law are deemed to be findings of fact, such matters are incorporated herein by reference as findings of fact.

*Conclusions of Law*

19. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (D) and (O).

20. The parties have stipulated that the only issue before the Court is the Court's authority under the Bankruptcy Code to approve the Enhancement Fee. The Court concludes that it had such authority under three separate sections of the Bankruptcy Code: (i) 11 U.S.C. § 506(b), (ii) 11 U.S.C. § 364, and (iii) 11 U.S.C. § 105(a).

SECTION 506(b)

21. Section 506(b) of the Bankruptcy Code states, in pertinent part, that:

"To the extent that an allowed secured claim is secured by property the value of which … is greater than the amount of such claim, there *shall be allowed* to the holder of such claim, … any reasonable *fees, costs,* or *charges provided under the agreement* under which such claim arose." (Emphasis added.)

Because the language of the statute is plain and unambiguous, the only function of this Court is to enforce it according to its terms. *United States v. Ron Pair Enterprises,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

22. The elements that must be satisfied before the Court can approve a payment of a fee under 11 U.S.C. § 506(b) are: (1) the underlying agreement must provide for the fee, (2) the value of the collateral must exceed the amount of the debt, accrued interest, and fee sought and (3) the fee must be reasonable. *In re B & W Management, Inc.,* 63 B.R. 395, 401 (Bankr.D.D.C.1986). There is no language contained in 11 U.S.C. § 506(b) limiting the application of that statute to pre-petition agreements. The Court concludes that 11 U.S.C. § 506(b) applies equally to post-petition agreements, as well as to pre-petition agreements. (*See also* 11 U.S.C. § 103(a) providing that Chapter 5 of the Bankruptcy Code applies to cases under Chapter 11 of the Bankruptcy Code.)

23. In the instant case, the Agreement approved in the Extended Financing Order expressly provided for payment of the Enhancement Fee at issue. In addition, the amount realized by Medicare–Glaser at the auction sale on account of assets on which Landmark held the first lien clearly exceeded the full amount of the Landmark debt, interest and the contingent Enhancement Fee. Finally, the Court's findings of fact in the Extended Financing Order and the findings herein recognize that the contingent Enhancement Fee was

reasonable. Consequently, the Court must enforce the Agreement according to its terms and ratify and approve the Enhancement Fee.

24. Section 506(b) is premised on the policy that a secured creditor is entitled to the "benefit of his bargain." 3 *Collier on Bankruptcy* ¶ 506.05, 506–54 (1990). *See also Lincoln Service Corp. v. Holliday*, 60 B.R. 425, 427 (N.D.Ill.1986) ("a secured creditor is entitled to enforce a valid contractual obligation for payment of such fees"). Thus, ("when fees are provided for in the underlying agreement, and when the creditor is oversecured, allowance of ... [such] fees is *mandatory*.) *In re Dalessio*, 74 B.R. 721, 723 (9th Cir.BAP 1987) (Emphasis added.)

25. Because the underlying Agreement between Landmark and Medicare–Glaser provided for the payment in question, and because Landmark proved to be an oversecured creditor, the payment of the contingent Enhancement Fee to Landmark was not only authorized, but was required, by 11 U.S.C. § 506(b) in light of the Court's express finding that the fee was reasonable.

### SECTION 364

26. Section 364 of the Bankruptcy Code also provides authority for the Court to approve the Enhancement Fee. Section 364 provides bankruptcy courts with the power to authorize post-petition financing for a Chapter 11 debtor-in-possession. Having recognized the natural reluctance of lenders to extend credit to a company in bankruptcy, Congress designed § 364 to provide "incentives to the creditor to extend post-petition credit." *In re Ellingsen MacClean Oil Co., Inc.*, 834 F.2d 599, 603 (6th Cir.1987), *cert. denied*, 488 U.S. 817, 109 S.Ct. 55, 102 L.Ed.2d 33 (1988).

27. Although 11 U.S.C. § 364 enumerates some incentives that a court may grant to post-petition lenders, the list is not exhaustive. Courts frequently have authorized the use of inducements not specified in the statute. *See e.g., Ellingsen*, 834 F.2d at 603 ("a more traditional 364(c) arrangement ... may not suffice").

28. For example, in *In re FCX, Inc.*, after finding (like the case at bar) that no other credit was available, the court approved a cross-collateralization provision, even though this was not directly authorized by 11 U.S.C. § 364. The court in *FCX* reasoned that "many lenders ... want more [than provided for in § 364], and it is not uncommon for the debtor and the secured creditor to ask the court to approve a lending arrangement containing terms favoring the lender which far exceed those authorized by § 364." *In re FCX, Inc.*, 54 B.R. 833, 838 (Bankr.E.D.N.C. 1985). Such arrangements often are approved even though the debtor must make significant concessions that affect the rights of other creditors. *Id.*

29. Using similar reasoning, the *Ellingsen* court affirmed a bankruptcy court's order protecting the lender from ... a challenge to its security interests. 834 F.2d at 604. In view of the continuing losses and depletion of the lender's collateral base, the court in *Ellingsen* found it to be "necessary to induce the Banks to extend more credit in a risky situation" by authorizing the debtors to waive all objections in regard to any challenges it might have concerning the validity of the lenders' security interests. *Id.* The court further concluded that although

[t]his aspect of the order does not fit neatly into any of the ... categories of § 364(c) ... [t]his aspect of the order, however, was part of the whole "package" authorized under § 364(c).

*Id. See also In re Revco D.S., Inc.*, 901 F.2d 1359, 1364 (6th Cir.1990) (periodic interest payments part of the "package" approved by bankruptcy court and hence authorized under Code).

30. The RTC and the Committee would have the Court read 11 U.S.C. § 364 as limiting a post-petition financing agreement only to those provisions specifically enumerated in the statute. Such a reading of § 364 would prevent courts from approving financing containing provisions for defaults, for providing financial information, for negative pledge covenants, and even for a maturity date because such pro-

visions are not specifically enumerated in § 364. Such a reading is patently incorrect since "obtaining credit" under § 364 means far more than just providing for the establishment of a superpriority lien or administrative claim. Accordingly, in addition to the express authorization contained in 11 U.S.C. § 506(b), the Court clearly had the authority under 11 U.S.C. § 364 of the Bankruptcy Code to enter the Extended Financing Order approving the contingent Enhancement Fee.

## SECTION 105(a)

 31. Furthermore, 11 U.S.C. § 105(a) provides additional authority for the Court to enter the Extended Financing Order authorizing the payment of the contingent Enhancement Fee. Bankruptcy courts are, in essence, courts of equitable jurisdiction. *Bank of Marin v. England,* 385 U.S. 99, 103, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966). To permit the exercise of this jurisdiction, Congress granted bankruptcy courts the authority under § 105(a) to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." This section, codifying the traditional equity powers of the bankruptcy courts, " 'is an omnibus provision phrased in such general terms as to be the basis for a broad exercise of powers in the administration of a bankruptcy case.' " *In re Charles & Lillian Brown's Hotel, Inc.,* 93 B.R. 49, 54 (Bankr.S.D.N.Y.1988); 2 *Collier on Bankruptcy* ¶ 105.01 at 105–01 (15th ed. 1988).

32. "A Bankruptcy Court, as a court of equity, may look to the substance of a transaction and, if appropriate, devise new remedies where those in law are inadequate." *Matter of Executive Office Centers, Inc.,* 96 B.R. 642, 648 (Bankr.E.D.La. 1988). *See also In re Global Western Development Corp.,* 759 F.2d 724, 727 (9th Cir.1985). Thus, bankruptcy courts "have the authority to take equitable steps not specifically authorized by the bankruptcy laws...." *Matter of Inter. Gold Bullion Exchange, Inc.,* 53 B.R. 660, 667 (Bankr.S. D.Fla.1985).

33. One of the major purposes of a reorganization proceeding is "to preserve the going concern value of the debtor's business for the mutual benefit of the debtor and his creditors." *Matter of Levinsky,* 23 B.R. 210, 215 (Bankr.E.D.N.Y.1982). By avoiding foreclosure, liquidation or a premature sale, the court maintains the ability of junior interests to receive some form of recovery from the debtor's property. *Levinsky,* 23 B.R. at 215.

34. In the case at bar, the Extended Financing Order providing for the contingent Enhancement Fee in the event sale proceeds from an auction exceeded the Landmark debt was a proper exercise of the Court's equitable jurisdiction. The fee induced Landmark to extend its post-petition financing beyond its maturity date, thus preventing an immediate foreclosure and liquidation. The benefits realized from the preservation of Medicare–Glaser's going concern value by this means have accrued to all junior interests involved. Therefore, the Extended Financing Order and the contingent Enhancement Fee provided for therein clearly was both "necessary and appropriate" to effectuate the purposes of Chapter 11 and reflected the economic realities of the situation.

35. To the extent any of the above findings of fact are deemed to be conclusions of law, such matters are incorporated herein by reference as conclusions of law.

36. In accordance with Bankruptcy Rule 9021, the Court will enter a separate order denying the RTC's motion consistent with the findings and conclusions set forth herein.