In re DEFENDER DRUG STORES, INC.,
an Arizona corporation, SupeRX of
Arizona, Alabama & Georgia Corp., a
Delaware corporation, Medicare–Glaser
Corp., a Missouri corporation, Debtors.

RESOLUTION TRUST CORPORATION
Receiver for Lincoln Savings and Loan
Association, F.A., Appellant,

v.

OFFICIAL UNSECURED CREDITORS
COMMITTEE, Landmark Commercial
Corporation, Defender Drug Stores,
Inc., SupeRX of Arizona, Alabama &
Georgia Corporation, Medicare–Glaser
Corp., Appellees.

BAP Nos. AZ–91–1253–PVAs,
AZ–91–1271–PVAs.
Bankruptcy Nos. 90–4885,
90–4886 and 90–4887.
Adv. No. 91–128–PHX–RGM.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted March 19, 1992.

Decided Oct. 2, 1992.

Edward P. Ballinger Jr., Phoenix, Ariz., for Resolution Trust Corp.

Bret Maidman, Phoenix, Ariz., for Unsecured Creditors' Committee.

Carl J. Spector, St. Louis, Mo., for Landmark Commercial Corp.

1. The debtors in these jointly administered bankruptcy cases are Medicare–Glaser, Defender Drug Stores, Inc., and SupeRX of Arizona, Georgia and Alabama Corporation. The matters raised in this appeal concern only Medicare–Glaser.

## OPINION

Before: PERRIS, VOLINN, and ASHLAND.

PERRIS, Bankruptcy Judge:

As a condition for extending the maturity date of postpetition financing, the debtor agreed to pay Landmark Commercial Corporation a 10% contingent enhancement fee over and above the amount of its indebtedness to Landmark. The bankruptcy court approved the agreement but reserved the rights of certain parties to challenge the validity of the enhancement fee. We AFFIRM the bankruptcy court's order denying the Resolution Trust Corporation's motion to disallow the enhancement fee.

## FACTS

The debtor, Medicare–Glaser Corp.,[1] which operated a chain of drug stores, filed its Chapter 11 petition on May 10, 1990. At that time, the debtor owed Landmark approximately $6 million, which was secured by various liens on the debtor's assets, including the debtor's inventory and accounts receivable ("the Landmark Collateral"). Lincoln Savings and Loan held a junior lien in the Landmark collateral, securing indebtedness of approximately $14.6 million.

On May 11, 1990, the bankruptcy court authorized the debtor to obtain postpetition secured financing from Landmark. Landmark agreed to provide financing for a term of six months at an interest rate of 2½% over the prime rate.[2] In return, Landmark would receive, *inter alia*, a first priority lien on most of the debtor's assets and a release of the debtor's claims against Landmark.

By November of 1990, the debtor's attempts at reorganization had failed. The debtor had defaulted under the financing arrangement. Landmark notified the debt-

2. The financing arrangement provided that the debtor would deliver all cash collateral to Landmark for application to the prepetition debt and Landmark would advance to the debtor up to $8 million, with each day's loan limited to an amount measured by 60% of the value of eligible inventory, for the payment of certain designated expenses.

or that it would not extend the November 10, 1990, maturity date of the arrangement and that it would foreclose upon the debtor's assets shortly thereafter.

Before the financing arrangement expired, however, Landmark agreed to extend the arrangement so that the debtor could continue to use cash collateral in the operation of its business. Under the agreement, Landmark would extend the financing arrangement to March 10, 1991, if the debtor obtained a letter of credit for the benefit of Landmark in the amount of $6.3 million by November 13, 1990.[3] If such a letter of credit was not timely posted, Landmark agreed to extend the financing for 30 days so that the debtor's assets could be sold as a going concern at an auction under 11 U.S.C. § 363. If the debtor's assets were so sold, Landmark would receive the following "enhancement fee":

> an additional payment equal to ten percent (10%) of the gross consideration received and/or realized by the Debtor or its estate in excess of the amount necessary to pay in full the then outstanding Landmark Indebtedness (as such term is used in the Interim Order), which additional payment shall be added to the Landmark Indebtedness and shall be paid to Landmark in cash concurrent with the payment in full of the Landmark Indebtedness.

The Official Unsecured Creditor's Committee ("the Committee") and the Resolution Trust Corporation ("RTC"), receiver for Lincoln Savings and Loan, objected to the terms of the extension agreement and to the enhancement fee in particular. At the hearing on the extension, the bankruptcy court determined that the extension agreement, including the enhancement fee, was appropriate and reasonable under the circumstances. During a discussion with the parties, however, the court indicated that it would revisit the issue of whether, as a matter of law, the Bankruptcy Code authorized the approval of such an enhancement fee. The court then entered an

order authorizing the extension of the financing arrangement, including the enhancement fee (the "extension order"). Pursuant to the parties' stipulation, the court subsequently amended the extension order (the "stipulated amendment") consistent with its statements at the hearing by adding the following paragraph:

> Notwithstanding any provision to the contrary in this Order, in the event that there is a sale under 11 U.S.C. Section 363(b) of the Debtor's business, [RTC] or the Creditors' Committee shall have the right to challenge the validity of [the enhancement fee] at a subsequent hearing on the limited ground that no authority exists under the Bankruptcy Code for the entry of an order approving such premium.

Excerpt of Record ("E.R.") at 426–27.

The debtor failed to obtain a letter of credit and no other lender agreed to provide alternative financing. The court conducted an auction sale of the debtor's assets. The sale realized sufficient consideration to pay the entire Landmark indebtedness in full and to trigger an enhancement fee payment to Landmark in the amount of $372,609.

RTC filed a motion to disallow the enhancement fee. The bankruptcy court denied RTC's motion by a minute order. The ruling indicated that the court revisited the enhancement fee because of its prior concern over its power to approve the fee. The ruling further indicated that the court ratified and approved the fee because it was appropriate for the risk involved and was not a penalty or otherwise an unreasonable cost of financing. Pursuant to the court's direction, Landmark lodged an order and separate written findings on March 13, 1991. The court signed and entered Landmark's proposed order and findings on March 14, 1991, *In re Defender Drug Stores, Inc.*, 126 B.R. 76 (Bankr.D.Ariz. 1991), before RTC filed its objection to the order and the findings. RTC filed these

---

**3.** The deadline for the letter of credit was subsequently extended to November 15, 1990. Under this arrangement, investors with whom the debtor was then negotiating would purchase

Landmark's rights under its loan agreement with the debtor and would post the letter of credit to ensure the payment of the purchase price.

timely appeals from the under advisement ruling and the order denying its motion to disallow the enhancement fee.[4]

## ISSUES

1. Whether, and to what extent, issues surrounding the approval of the enhancement fee are moot or otherwise beyond the scope of this appeal.

2. Whether the bankruptcy court correctly determined that the Bankruptcy Code authorized the payment of the enhancement fee to Landmark.

3. Whether the bankruptcy court committed reversible error in adopting Landmark's proposed findings without providing RTC an adequate opportunity to object.

## STANDARD OF REVIEW

■ The bankruptcy court's statutory authority to approve the enhancement fee presents a question of law. We review questions of law *de novo*. *E.g., In re Tuma*, 916 F.2d 488, 490 (9th Cir.1990).

## DISCUSSION

1. *Mootness and the Scope of this Appeal.*

A. Mootness.

■ Landmark contends that the RTC's failure to obtain a stay combined with the fact that Landmark extended credit in good faith in reliance on the extension order renders this appeal moot under 11 U.S.C. § 364(e)[5] and paragraph 19 of the extension order.[6] RTC contends that the stipulated amendment to the extension order carved out an exception to section 364(e) which preserves challenges to the legal validity of the enhancement fee. We agree with RTC. The parties expressly contemplated and the court expressly ordered that, notwithstanding section 364(e) and contrary provisions in the order, the court could later determine that it lacked authority to approve the enhancement fee.

B. The Scope of this Appeal.

■ An issue related to mootness is whether the stipulated amendment and the context in which this appeal arises limits the issues that may be raised in challenging the approval of the enhancement fee. Landmark contends that this appeal is limited to the narrow legal issue of the existence of authority under the Bankruptcy Code to approve the enhancement fee. Landmark therefore contends that factual issues such as the reasonableness of the fee and adequate protection are beyond the scope of this appeal. RTC contends that the bankruptcy court's legal authority cannot be separated from the facts of the case and necessarily involves a review of the findings underlying the bankruptcy court's approval of the fee.

We agree with Landmark. At the November 13, 1990, hearing on the extension order, the court had extensive discussions with counsel for all parties addressing the extent to which the enhancement fee issue would be revisited. Excerpts of Record ("E.R.") at 592–94, 635–37. These discussions indicate that the court and the parties contemplated that the court would revisit

---

**4.** The Committee did not appeal the bankruptcy court's order. RTC did, however, name the Committee as an appellee. On December 18, 1991, the Panel entered an order realigning the Committee as an appellant for purposes of briefing only. The Committee has filed a brief supporting RTC's position.

**5.** Section 364(e) provides as follows:
The reversal or modification on appeal of an authorization under this section to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the

appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.
All section references are to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, unless otherwise indicated.

**6.** Paragraph 19 of the extension order basically tracks the language of section 364(e) and preserves any extensions of credit or advances made pursuant to the order or any priorities created by the order in the event that any provisions of the order are modified, vacated or reversed by subsequent order of the bankruptcy court or any other court.

only the legal question of whether it had authority or jurisdiction under the Bankruptcy Code to approve such an enhancement fee. Similarly, the stipulated amendment to the extension order reserves

> ... the right to challenge the validity of [the enhancement fee] at a subsequent hearing on the limited ground that no authority exists under the Bankruptcy Code for the entry of an order approving such premium.

E.R. at 426–27. The record reflects that neither the parties nor the court contemplated revisiting factual or discretionary questions involved in the approval of the enhancement fee. It follows that the scope of the issues properly raised in the motion to disallow the enhancement fee and properly raised in this appeal are limited to legal issues pertaining to the court's authority. Since there is such a limitation, the discretionary determinations and factual findings underlying the exercise of the court's authority are beyond the scope of this appeal.[7]

### 2. The Bankruptcy Court's Authority to Approve the Enhancement Fee.

■ The bankruptcy court determined that it had authority to approve the enhancement fee under section 364.[8] RTC and the Committee dispute this determination and further contend that, in any event, the enhancement fee could not be allowed because it was part of a sub rosa plan of reorganization that did not comply with the requirements for confirmation of a plan.

### A. Section 364.

Section 364 allows bankruptcy courts to authorize postpetition financing for a Chapter 11 debtor in possession and expressly allows courts to authorize certain protections designed to assure repayment of postpetition lenders. Bankruptcy courts, however, have regularly authorized postpetition financing arrangements containing lender incentives beyond the explicit priorities and liens specified in section 364. Although section 364 does not specifically refer to the payment of interest on postpetition debt, courts have implicitly held that section 364 authorizes interest on postpetition loans as compensation for the use of the lender's money and for the risk of nonpayment. Bankruptcy courts have also authorized postpetition credit arrangements containing cross collateralization provisions in certain circumstances, whereby a security interest in postpetition collateral is granted to secure prepetition indebtedness.[9] *See, e.g., In re Beker Industries*

---

7. We are not, as the RTC contends, determining the bankruptcy court's authority in a factual vacuum. Rather, we are accepting the bankruptcy court's factual findings as true and discretionary determinations as correct. The question then becomes, given such factual findings and discretionary determinations, whether the bankruptcy court had authority to authorize the enhancement fee.

8. Because we determine, as discussed below, that the bankruptcy court properly authorized the enhancement fee pursuant to section 364, we need not and do not address the alternative grounds of sections 105(a) or 506(b), relied upon by the bankruptcy court and Landmark.

9. The validity of cross collateralization provisions is not without dispute. At least one Circuit has held that cross collateralization provisions are not authorized by the Bankruptcy Code. *See In re Saybrook Manufacturing Co.,* 963 F.2d 1490 (11th Cir.1992). The Ninth Circuit has indicated that a cross collateralization provision approved by the bankruptcy court falls within the protection of 364(e), but has left open the question of whether such provisions

are illegal per se. *In re Adams Apple, Inc.,* 829 F.2d 1484, 1488–89, n. 6 (9th Cir.1987). *In re Sun Runner Marine, Inc.,* 945 F.2d 1089 (9th Cir.1991), casts doubt on the validity of such cross collateralization provisions when the prepetition claim is not fully secured by holding that section 364 does not authorize the payment of a prepetition unsecured claim as a condition precedent to postpetition financing. *Sun Runner* further determined that the debtor may not use the mechanism of curing defaults and assuming an executory contract under section 365 to avoid this limit of authority under section 364.

We need not determine whether cross collateralization provisions are authorized by the Bankruptcy Code because the enhancement fee at issue in this case does not, as do cross collateralization provisions, violate the fundamental priority scheme of the Code by allowing additional assets to be used to secure the payment of prepetition claims that may otherwise be unsatisfied. Unlike a cross collateralization provision or the financing arrangement at issue in *Sun Runner,* the enhancement fee at issue in this case does not alter Landmark's rights on its

*Corp.*, 58 B.R. 725, 741–42 (Bankr.S.D.N.Y. 1986); *In re FCX, Inc.*, 54 B.R. 833 (Bankr. E.D.N.C.1985); *see also In re Adams Apple, Inc.*, 829 F.2d 1484 (9th Cir.1987); *In re Ellingsen MacLean Oil Co.*, 834 F.2d 599 (6th Cir.1987). Courts have further allowed a debtor in possession that obtains postpetition financing from a prepetition lender to waive, as part of the financing arrangement, any objections to the validity of the lender's prepetition security interest. *See, e.g., Ellingsen MacLean Oil Co., supra; FCX, Inc., supra.*

Our research has uncovered no cases specifically dealing with an enhancement fee paid to a postpetition lender, such as the fee at issue in this case. We, therefore, consider the legality of the enhancement fee by examining the legal principles under which lender incentives are judged. A bankruptcy court's discretion to authorize incentives to postpetition lenders is not unfettered. Debtors in possession generally enjoy little negotiating power with a proposed lender, particularly when the lender has a prepetition lien on cash collateral. As a result, lenders often exact favorable terms that harm the estate and creditors. *See In re Ames Department Stores, Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y.1990); *In re Tenney Village Company*, 104 B.R. 562, 567–570 (Bankr.D.N.H. 1989).

 While certain favorable terms may be permitted as a reasonable exercise of the debtor's business judgment, bankruptcy courts do not allow terms in financing arrangements that convert the bankruptcy process from one designed to benefit all creditors to one designed for the unwarranted benefit of the postpetition lender. *Id.* Thus, courts look to whether the proposed terms would prejudice the powers and rights that the Code confers for the benefit of all creditors and leverage the

Chapter 11 process by granting the lender excessive control over the debtor or its assets as to unduly prejudice the rights of other parties in interest. *Id.* The bankruptcy court cannot, under the guise of section 364, approve financing arrangements that amount to a plan of reorganization but evade confirmation requirements.[10] *See In re Chevy Devco*, 78 B.R. 585, 589–90 (Bankr.C.D.Cal.1987). Finally, section 364(d) specifically sets forth the additional standards requiring that the debtor must demonstrate that it is unable to make less burdensome credit arrangements and that the interests of existing lienholders are adequately protected where, as in this case, the postpetition credit is secured by a superior lien on encumbered assets. Thus, to the extent the enhancement fee was paid from assets in which RTC held a lien interest,[11] an additional requirement is that the interest of RTC in the collateral must be adequately protected.

The provision for the enhancement fee allowed Landmark to share in any increased value that might be obtained by virtue of the one month extension of the credit arrangement. Also, similar to an interest provision, the fee was a premium for the forbearance of Landmark's rights to proceed against the collateral upon the expiration of the initial financing arrangement and the risk of reduced payment by virtue of the extension.

The bankruptcy court determined that the debtor was unable to obtain credit on more favorable terms and the credit arrangement, including the enhancement fee, was reasonable and necessary in light of the risks involved to enable the debtor to continue its operation and have the opportunity to realize potential value in excess of that which would be obtained in a foreclosure sale. The bankruptcy court also

---

prepetition claim. Rather, the fee is postpetition compensation for forbearance in collecting postpetition debt.

**10.** The issue of whether the enhancement fee is prohibited on this basis will be separately addressed below.

**11.** Although the record is unclear, part of the enhancement fee may have been paid from as-

sets in which no party held a perfected security interest—the debtor's leasehold interests. *See* Committee's Brief at p. 2 and the evidence cited therein. To the extent the enhancement fee was paid from unencumbered assets, the requirements of adequate protection arguably do not apply.

found that RTC's interest in the collateral was adequately protected.[12] For the reasons discussed above, the bankruptcy court's factual findings on the issue of reasonableness and adequate protection are beyond the scope of this appeal and must be assumed to be correct.

As discussed below, this is not a case where the bankruptcy court, under the guise of section 364, approved financing arrangements that amounted to a plan of reorganization. Similarly, neither the extension order nor the enhancement fee, by themselves, enable Landmark to control the actions of the debtor nor prevent other parties from exercising their rights.[13] Given these circumstances, and the fact that the reasonableness and adequate protection findings are beyond the scope of this appeal, we conclude that the bankruptcy court correctly relied upon section 364(d) as authority for including the enhancement fee as part of the postpetition financing arrangement.

**B. The Enhancement Fee as Part of a Sub Rosa Plan.**

■ RTC and the Committee contend that, in any event, the enhancement fee cannot be authorized because it is part of a plan for the liquidation of all of the debtor's assets and as such, it is part of a sub rosa plan of reorganization which must comply with the confirmation requirements. They further contend that the fee violates confirmation requirements because it allows a senior creditor to be paid more than the full amount of its claim to the detriment of junior creditors. Landmark contends that the extension order at issue simply extended the financing which allowed the debtor to conduct an auction sale pursuant to a separately noticed section 363 action.

We agree with Landmark. When preconfirmation transactions, such as the sale

of substantially all of the debtor's assets, have the effect of or dictate the terms of a future reorganization plan, some courts have required the debtor to provide creditors with the protection they would have received in the confirmation process. *See, e.g., In re Continental Airlines, Inc.,* 780 F.2d 1223, 1226–28 (5th Cir.1986). The extension order in this case, however, did not have such an effect. It simply extended the postpetition financing to allow the debtor to either obtain alternative financing or sell its assets as a going concern at an auction sale. While the sale itself may have had the effect of a reorganization plan, the order authorizing the sale was entered after a separately noticed hearing and is not the subject of this appeal.

**3. *The Adoption of the Proposed Findings.***

■ RTC contends that the bankruptcy court erred in adopting wholesale the proposed findings submitted by Landmark without providing RTC an adequate opportunity to object to the findings. RTC is correct that the bankruptcy court's actions did not comply with local rules because it did not wait five days from the filing of the proposed findings to allow RTC the opportunity to submit its objection. *See* Rule 47, Rules of Practice of the United States District Court for the District of Arizona. Any error in this regard would not, by itself, support reversal of the bankruptcy court's decision.

■ Federal R.Civ.P. 61, as made applicable by Fed.R.Bankr.P. 9005, allows the Panel to disregard any error that does not affect the substantial rights of the parties. The bankruptcy court's error in adopting the proposed findings verbatim without providing an opportunity for objection does not affect RTC's substantive rights. The fact that a court adopts proposed findings

---

12. In the extension order, the bankruptcy court adopted the findings from the original prepetition financing order, which included a finding that the interest of RTC was adequately protected. In its findings issued in connection with the order denying RTC's motion to disallow the enhancement fee, the bankruptcy court also

found that RTC's interest was adequately protected.

13. Rather, the extension order expressly contemplated that other financing arrangements could be made, in which case, the enhancement fee would not be paid.

verbatim does not, by itself justify reversal or the application of a different standard of review. *See Orantes–Hernandez v. Thornburgh*, 919 F.2d 549, 567 (9th Cir. 1990).

## CONCLUSION

For the reasons set forth above, we determine that this appeal is not moot. We also determine that the scope of this appeal is limited to the legal question of the bankruptcy court's authority to approve the enhancement fee. The bankruptcy court correctly determined that it had authority to allow the enhancement fee as part of a postpetition financing arrangement pursuant to section 364(d). We, therefore, AFFIRM the bankruptcy court's order denying the motion to disallow the enhancement fee.