**In re SETH CO., INC., Debtor.**

**No. 01–22241.**

United States Bankruptcy Court,
D. Connecticut.

July 10, 2002.

---

John A. Wall, Wall, McCormack & Robinson, Windsor, CT, for debtor-movant.

John Aletta, Special Assistant, United States Attorney, East Hartford, CT, for United States of America, Internal Revenue Service, Creditor.

*RULING ON DEBTOR'S MOTION TO INCUR DEBT SECURED BY A SENIOR LIEN ON PROPERTY SUBJECT TO LIENS*

ROBERT L. KRECHEVSKY,
Bankruptcy Judge.

I.

Seth Co., Inc., ("the debtor") filed a Chapter 11 petition on July 9, 2001. The debtor, whose vice-president and sole stockholder is Derek S. Pierce, listed its business as that of real estate development and house construction. Gary L. Pierce, the debtor's president, is Derek S. Pierce's father.

In a revised motion filed on May 2, 2002, the debtor, as debtor in possession, seeks authorization, pursuant to Bankruptcy Code § 364(d),[1] to incur debt of $450,000 secured by a senior mortgage to Enfield Lumber Company, Inc. ("Enfield Lumber"), on two residential lots owned by the debtor—one located on Ridge Boulevard, East Granby, Connecticut ("the East Granby Lot"), and the other on Neipsic Road, Glastonbury, Connecticut ("the Glastonbury Lot"), (together, "the Lots") on which partially constructed homes presently exist.

The United States of America, Internal Revenue Service ("the Government or the IRS"), which holds two pre-petition federal income tax liens on all of the debtor's assets, filed an objection to the granting of the motion.[2] The Government principally contends that the debtor does not provide

1. Section 364(d) provides:
    (1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if—
       (A) the trustee is unable to obtain such credit otherwise; and
       (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.
    (2) In any hearing under this subsection, the trustee has the burden of proof on the issue of adequate protection.

2. There are other existing liens filed against the lots, but they are of no relevance in this proceeding.

adequate protection [3] for the IRS liens covering the Lots when they are primed by the proposed first mortgage. A hearing on the debtor's motion concluded on May 10, 2002.

## II.

### A.

At the hearing, the debtor submitted the testimony of an appraiser on the present fair market value of the East Granby Lot and the value when construction is fully completed, the building on the lot being 40 percent completed. The appraiser set present fair market value at $100,000 to $110,000, and upon completed construction, a value of $380,000. The house on the Glastonbury Lot is 20 percent completed. The appraiser valued that lot in its present condition at between $70,000 to $80,000 and, upon completion, at $499,000 (assuming the completion of a road in the subdivision where the lot is located). There presently are no buyers for the Lots.

The motion asserts that the debtor requires the loan to complete construction of the houses on the Lots; to "fund the Debtor's ongoing working capital and general corporate needs" ("operating expenses"); to fund the purchase of four additional lots in Glastonbury on which the debtor holds options; and to "pay the fees, costs, expenses and disbursements of professionals retained by the Debtor...." (Motion ¶ 9.)

Gary L. Pierce testified that the partially-constructed houses would rapidly deteriorate over time if not completed, and that he believed the debtor would receive, when the Lots were sold, monies in excess of the Government's present interest in the Lots.

The debtor has contested the validity of the IRS liens, and litigation is presently pending in the District Court for the District of Connecticut to resolve the validity of these liens and the claims which the debtor has asserted against the Government. Through the testimony of a loan officer from a local savings bank, the debtor established that while the litigation with the Government exists, and the debtor remains a petitioner in the bankruptcy court, the debtor cannot secure loans from local lending institutions, but that the interest and other terms of the proposed Enfield Lumber loan were those that an institutional lender, otherwise, would likely impose. These terms are a $450,000 loan for one year at 7.25 percent interest and a one percent closing fee, with the Lots and additional lots purchased to be collateral for the loan.

The tax liens filed against the debtor named the debtor as the "nominee/alter ego/transferee of Gary Pierce," according to the Government proof of claim, and total $4,300,515.33. In addition, the Government proof of claim asserts unsecured priority corporate taxes due from the debtor in the amount of $311,319.00. The IRS

---

**3.** Section 361 provides:

When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—

(1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;

(2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or

(3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

tax liens apparently cover the debtor's 21–lot subdivision in Manchester, Connecticut, and a bank account containing approximately $600,000. The debtor does not contend that the IRS liens, if valid, are oversecured.

### B.

The Government argues that the record made in this proceeding does not support a finding that a sufficient equity will undoubtedly exist upon completion of the houses to protect the IRS liens. It also contends its undercollateralized liens should not be displaced to fund the purchase of additional lots, or for the payment of the debtor's operating expenses as well as fees due the debtor's attorneys. The Government further asserts that the debtor's motion contains some of the factors that should be contained in a plan of reorganization, and the debtor concedes that no plan is in prospect. *Cf. In re First South Sav. Ass'n.*, 820 F.2d 700, 714 (5th Cir.1987) (declaring that a motion for authority to grant priming lien, where profit assumptions were involved in providing adequate protection, should be filed, if possible, in the context of a plan of reorganization); *In re Defender Drug Stores, Inc.*, 145 B.R. 312, 317 (9th Cir. BAP 1992) ("The bankruptcy court cannot, under the guise of section 364, approve financing arrangements that amount to a plan of reorganization but evade confirmation requirements.").

### III.

The ability to prime an existing lien is extraordinary, and in addition to the requirement that the trustee be unable to otherwise obtain the credit, the trustee must provide adequate protection for the interest of the holder of the existing lien.... In most cases, adequate protection is provided by conditioning or limiting the borrowing in order to maintain a sufficient equity in the subject property to protect the existing lienholder.

3 *Collier on Bankruptcy* ¶ 364.05 (15th Ed. Revised 2002); *see also Resolution Trust Corp. v. Swedeland Development Group, Inc. (In re Swedeland Development Group, Inc.)*, 16 F.3d 552, 564 (3rd Cir. 1994) ("In other words, the proposal should provide the pre-petition secured creditor with the same level of protection it would have had if there had not been post-petition superpriority financing.").

It is readily apparent that the debtor is not relying upon subsections (1) or (2) of § 361. *See supra* note 3. The debtor, for adequate protection, neither proposes cash payments to the IRS nor additional or replacement liens. It is also apparent that in relying upon subsection (3) of § 361, the debtor is not providing the Government with the "indubitable equivalent" of the Government's interest in the Lots when an unspecified portion of the proposed loan is to fund the debtor's operating non-construction expenses and payment of professional fees. *Cf. In re Mosello*, 195 B.R. 277, 292 (Bankr.S.D.N.Y.1996) (denying motion to permit Chapter 11 debtor to borrow $350,000 by granting lender a lien which would prime that of undersecured creditor because speculative benefit to undersecured creditor did not constitute adequate protection).

The court concludes that § 364(d)(1) does not authorize it to prime the Government's liens with the proposed Enfield Lumber mortgage to the extent that the loan proceeds are intended to be used to fund the debtor's operating expenses and to pay professional fees. The court would be prepared to consider approving financing to complete the partially-constructed homes on the Lots to prevent unnecessary economic waste. As for the motion's re-

quest concerning funding the purchase of additional lots, the court concludes such request may be better addressed by a separate motion not involving the debtor's presently-owned Lots.

### IV.

For the reasons stated, the debtor's motion to incur debt secured by a senior lien must be denied.   It is

SO ORDERED.