In re Donovan BIGELOW, Debtor.

Fred A. Stephens, Appellant,

v.

Donovan Bigelow, Appellee.

BAP No. WW–01–1059–MaMoR.
Bankruptcy No. 99–12562.
Adversary No. 00–1944.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Submitted Without Oral Argument[1]
Oct. 24, 2001.

Decided Nov. 30, 2001.

1. The panel has determined that this appeal is suitable for decision without oral argument. *See* Federal Rule of Bankruptcy Procedure 8012 and 9th Cir. BAP Rule 8012–1.

Fred A. Stephens, Airway Heights, WA, pro se appellant.

Martin E. Snodgrass, Bellevue, WA, for Donovan Bigelow.

Before: MARLAR, MONTALI, and RUSSELL, Bankruptcy Judges.

## OPINION

MARLAR, Bankruptcy Judge.

### *INTRODUCTION*

Plaintiff Fred Stephens has appealed the bankruptcy court's dismissal of his nondischargeability complaint. Stephens contends that the bankruptcy court erred by refusing to apply issue preclusion to a Washington state court default judgment. Alternatively, he argues that the bankruptcy court erred by not determining the debt to be a nondischargeable defalcation by a fiduciary, *viz*, the debtors criminal defense attorney. We AFFIRM.

### *FACTS*

In 1995, Stephens was incarcerated in King County on a murder charge. He hired the debtor, Donovan Bigelow, who was a criminal defense attorney, to represent him in his criminal case. Stephens arranged for Bigelow to receive a prepaid fee of $15,000, for which Bigelow would function as third counsel, to supervise and review the work of two public defenders who were lead counsel.

On November 15, 1995, Stephens was convicted of first degree murder. Ste-

phens sued Bigelow in state court for breach of contract, fraud, and embezzlement for his alleged failure to render promised legal services. Moreover, Stephens alleged that Bigelow violated numerous rules of professional conduct, including failure to render an accounting of the "trust funds."

Bigelow failed to appear in the civil litigation, and on July 2, 1997, a default judgment with no express findings was entered in Stephens' favor for $15,000.[2]

Bigelow filed a chapter 7[3] petition on November 8, 1999.[4] In February of 2000, Stephens filed an adversary proceeding.[5] In September 2000, Stephens filed a Motion for Summary Judgment, asserting the legal argument that the state court default judgment conclusively determined the issues required for a determination of nondischargeability for fraud and misrepresentation, under § 523(a)(2)(A), and for fraud, defalcation or embezzlement under § 523(a)(4).[6] Stephens attached his affida-

vit, a copy of the state court complaint, the default judgment, and a Court of Appeals' decision upholding the default. The bankruptcy court denied the motion, and also Stephens' motion for reconsideration, in its order entered on January 30, 2001.

A trial was then held, at which only Bigelow and Stephens testified. The court ruled that Stephens had not proven fraud or embezzlement. Furthermore, the court characterized the $15,000 as a "classic retainer" which did not create a fiduciary relationship, as required under § 523(a)(4), and therefore found that Stephens had not proven defalcation by a fiduciary. The court dismissed Stephens' complaint.

Stephens filed a timely notice of appeal on February 8, 2001, appealing (1) the order denying his motion for summary judgment, (2) the order denying reconsideration of the summary judgment order, and (3) the order of dismissal, which was not entered until May 31, 2001.[7]

**2.** Approximately one year later, Bigelow succeeded in setting aside the default judgment. Stephens appealed, and Bigelow apparently defended his position to the Court of Appeals. The Court of Appeals ruled in favor of Stephens and reversed the order vacating the default judgment.

**3.** Unless otherwise indicated, all section, chapter and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

**4.** We take judicial notice of the Bankruptcy Court docket for administrative information that is not available in the excerpts of record. *Tuma v. Firstmark Leasing Corp. (In re Tuma)*, 916 F.2d 488, 491 (9th Cir.1990) (court may take judicial notice of bankruptcy records in the underlying proceeding).

**5.** The complaint was docketed as a complaint to "Determine Lien/Interest in Property." A copy of the complaint has not been made part of the excerpts of record. Apparently, the complaint was considered by the parties and

the court to be a timely nondischargeability complaint pursuant to § 523 and Fed. R. Bankr.P. 4007(c).

**6.** These sections provide, in relevant part:

A discharge under section 727 ... does not discharge an individual debtor from any debt–
(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–
(A) false pretenses, a false representation, or actual fraud, ....
. . . .
(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.
11 U.S.C. § 523(a).

**7.** Stephens filed a timely notice of appeal as to the summary judgment orders, but those orders were interlocutory. *See Jones–Hamilton Co. v. Beazer Materials & Servs., Inc.*, 973 F.2d 688, 693–94 (9th Cir.1992) (order denying summary judgment is generally not a final order, and is therefore not appealable). The

## ISSUES

1. Whether issue preclusion applied to the Washington state court default judgment.
2. Whether Bigelow and Stephens' attorney-client relationship, based on the $15,000 retainer, created a fiduciary relationship within the meaning of § 523(a)(4), and if so, whether a defalcation occurred.

## STANDARD OF REVIEW

■ The bankruptcy court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed *de novo*. *Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir.2001). "Review under the clearly erroneous standard is significantly deferential, requiring a 'definite and firm conviction that a mistake has been committed.'" *Smith v. Lachter (In re Smith)*, 242 B.R. 694, 699–700 (9th Cir. BAP 1999) (quoting *Concrete Pipe and Prods. of Cal., Inc. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 623, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993)).

■ Whether issue preclusion (collateral estoppel) applies is a mixed question of law and fact, reviewed *de novo*. *Molina v. Seror (In re Molina)*, 228 B.R. 248, 250 (9th Cir. BAP 1998).

## DISCUSSION

### A. Preclusive Effect of the Default Judgment

■ The doctrine of collateral estoppel, or issue preclusion, applies in nondischargeability proceedings. *Grogan v. Garner*, 498 U.S. 279, 284–85 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Under the federal full faith and credit statute, federal courts must give state court judgments the same preclusive effect that those judgments would receive from another court of the same state. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 993 (9th Cir. 2001); 28 U.S.C. § 1738. Washington law determines any preclusive effect of the default judgment entered in this case. *Gayden v. Nourbakhsh (In re Nourbakhsh)*, 67 F.3d 798, 800 (9th Cir.1995).

■ In Washington, there are four requirements for the application of issue preclusion: "(1) the issue decided in the prior adjudication is identical with the one presented in the second action; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with the party to the prior adjudication; and (4) application of the doctrine does not work an injustice." *Nielson v. Spanaway Gen. Med. Clinic, Inc.*, 135 Wash.2d 255, 263, 956 P.2d 312, 316 (1998).

■ The first element is in dispute in this appeal. It requires that "the identical, determinative issues were in fact litigated in the prior proceeding." *Miller v. Apfel–Wilson (In re Apfel–Wilson)*, 165 B.R. 939, 940 (Bankr.W.D.Wash.1994); *McDaniels v. Carlson*, 108 Wash.2d 299, 305, 738 P.2d 254, 258 (1987). This element requires a three-part analysis, that (1) identical issues; (2) were actually litigated in the prior proceeding and; (3) were necessary to the prior decision. *See Henderson v. Bardahl Int'l Corp.*, 72 Wash.2d 109, 118, 431 P.2d 961, 967 (1967) ("It is axiomatic that for collateral estoppel

notice of appeal was also effective as to the final order dismissing his complaint, upon entry of that order. Fed. R. Bankr.P. 8001(a). The prior interlocutory orders therefore merged into the dismissal order and are now appealable. *Munoz v. Small Business Admin.*, 644 F.2d 1361, 1364 (9th Cir.1981) (an appeal from a final judgment draws into question all prior nonfinal rulings and orders which produced the judgment).

by judgment to be applicable, that the facts or issues claimed to be conclusive on the parties in the second action were actually and necessarily litigated and determined in the prior action.").

### 1. "Actually Litigated"

■ In his state court complaint, Stephens alleged that Bigelow made false claims and misrepresented his services, that he embezzled funds, and that he violated numerous rules of professional conduct, including the failure to render an accounting of the "trust funds." Moreover, Stephens alleged breach of contract due to Bigelow's failure to render promised legal services.

To apply issue preclusion, the identical issues must have been "actually litigated." This case involves a pure default judgment. By "pure" default, we mean a default entered against a defendant who did not appear or participate in the prior lawsuit.

A review of the scant Washington law on this subject reveals that a default judgment cannot support the "actually litigated" requirement. Washington law (like federal law) follows the Restatement (Second) of Judgments, which espouses the view that a default judgment should have no collateral estoppel effect. *Restatement (Second) of Judgments* § 27 cmt. e (1982). *See Nielson,* 135 Wash.2d at 262, 956 P.2d at 315 (citing *Restatement*). *See also* Lewis H. Orland and Karl B. Tegland, *Washington Practice,* Trial Practice § 368 (West, 5th ed.1996). *Cf. Lenzi v. Redland Ins. Co.,* 140 Wash.2d 267, 279–80, 996 P.2d 603, 609 (2000) (distinguishing between "claim" preclusion, as applied to a default judgment to bar all future claims that could have been litigated before, and issue preclusion, which applies "only to

issues actually litigated") (quoting Philip A. Trautman, *Claim and Issue Preclusion in Civil Litigation in Washington,* 60 WASH. L. REV. 805, 813–14 (1985)).

*Nat'l Union Fire Ins. Co. of Pittsburgh, Penn. v. Boyovich (In re Boyovich),* 126 B.R. 348 (Bankr.W.D.Wash.1991), involved a nondischargeability proceeding in which the plaintiff moved for summary judgment, contending that two state court default judgments against the defendant precluded the relitigation of the fraud issues for nondischargeability. The bankruptcy court reviewed some of the same authorities cited above, and determined that Washington authorities have taken a "conservative approach" to the "actually litigated" element. *Id.* at 350. The court concluded that the default judgments did not satisfy the "actually litigated" requirement, and denied issue preclusion. *Id.* at 350–51.

We have found no contrary authority. The Washington cases cited by Stephens in his argument for the application of collateral estoppel either did not involve a default judgment or focused on *claim* preclusion, which does not apply in dischargeability proceedings, rather than *issue* preclusion. *See Brown v. Felsen,* 442 U.S. 127, 138–39, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979); *Lenzi, supra.* Moreover, a case, which Stephens argues is dispositive, is from Tennessee, where default judgments are given collateral estoppel effect. *See O'Rourke v. Wyllie (In re O'Rourke),* 169 B.R. 383, 384 (M.D.Tenn.1994).

Stephens further contends that this was not a pure default situation because Bigelow participated in the state court proceedings. He refers, however, to Bigelow's later argument before the Court of Appeals.[8] Such facts and circumstances do

---

8. The Court of Appeals' decision, dated February 1, 1999, stated in pertinent part: "No

not provide a reason to apply issue preclusion. First, Bigelow did not appear or participate in the proceedings that resulted in the default judgment. Moreover, there was no evidence that he abused the system.[9]

Secondly, an ambiguous or indefinite judgment cannot be the basis for issue preclusion. *Henderson*, 72 Wash.2d at 117–18, 431 P.2d at 966–67. The default judgment here did not contain any findings. Stephens' complaint sought damages for breach of contract as well as damages for fraud and embezzlement. The Court of Appeals did not make factual findings. *Compare Island County v. Mackie*, 36 Wash.App. 385, 387, 675 P.2d 607, 609 (1984) (court of appeals' affirmed findings of the trial court which were conclusive in subsequent litigation).

Moreover, it is not known what issues were presented by the parties to the Court of Appeals. There is no record of the proceedings before the Court of Appeals in our excerpts of record, which Stephens has the burden to provide. *See United States v. Lasky*, 600 F.2d 765, 769 (9th Cir.1979) ("It is not enough that the party introduce the decision of the prior court; rather, the party must introduce a sufficient record of the prior proceeding to enable the trial court to pinpoint the exact issues previously litigated."). *Accord, Boyovich*, 126 B.R. at 350 (citing *Beagles v. Seattle–First Nat'l Bank*, 25 Wash.App. 925, 930, 610 P.2d 962, 965 (1980)).

Based on the foregoing analysis, we hold that Washington law does not give collateral estoppel effect to pure default judgments. Therefore, the default judgment presented by Stephens lacked the "actually litigated" requirement for issue preclusion.

### 2. "Necessarily Decided"

 Even though the state court did not make any express findings, it has been held in our circuit that "[a]s a conceptual matter, if an issue was necessarily decided in a prior proceeding, it was actually litigated." *Harmon*, 250 F.3d at 1248.

 Under Washington law, "If there is ambiguity or indefiniteness in a verdict or judgment, collateral estoppel will not be applied as to that issue.... If there is uncertainty whether a matter was previously litigated, collateral estoppel is inappropriate." *Mead v. Park Place Props.*, 37 Wash.App. 403, 407, 681 P.2d 256, 259 (1984) (internal citations omitted).

In this case, the judgment is ambiguous concerning the basis upon which judgment was rendered. The default judgment in favor of Stephens could have been entered on a contractual theory alone, without a determination of Bigelow's fraud, embezzlement or breach of fiduciary duty, because Stephens also sought a judgment and damages for breach of contract. The

provision of CR 60(b) authorized vacation of the default judgment here. Moreover, Bigelow failed to demonstrate the existence of a prima facie defense to the claim, an important equitable consideration in the vacation of default judgments."

**9.** For example, federal courts have nonetheless applied collateral estoppel to a default judgment where the losing party has had a full and fair opportunity to participate in the previous litigation, but has engaged in serious obstructive conduct resulting in a default judgment. *See F.D.I.C. v. Daily (In re Daily)*, 47 F.3d 365, 368 (9th Cir.1995) (debtor actively participated, but thwarted the discovery process and trial preparation); *Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush)*, 62 F.3d 1319, 1323–24 (11th Cir.1995) (default judgment entered as a discovery sanction); *McCart v. Jordana (In re Jordana)*, 232 B.R. 469, 476–77 (10th Cir. BAP 1999) (default judgment was a sanction for discovery abuse), *aff'd*, 216 F.3d 1087 (10th Cir.2000)(unpublished table decision).

court's silence regarding a pleaded allegation does not constitute adjudication of the issue. *Harmon,* 250 F.3d at 1247 (construing California law, where a default judgment *can* be given collateral estoppel effect). The trial court could have referenced the allegations of the complaint, but it did not.

Because the silent judgment provided no indication of what issues were decided, it did not support the requirement for issue preclusion, *i.e.,* that the identical issues must have been necessarily determined in the prior litigation.

Having failed to meet the first element for issue preclusion under Washington law, and due to the existence of triable facts, Stephens' motion for summary judgment on the basis of issue preclusion was appropriately denied by the bankruptcy court.[10]

### B. "Defalcation" by a "Fiduciary"— § 523(a)(4)

Stephens also contends that he proved that Bigelow committed "defalcation while acting in a fiduciary capacity," pursuant to § 523(a)(4).

■■■ "Defalcation is defined as the 'misappropriation of trust funds or money held in any fiduciary capacity; [the] failure to properly account for such funds.' . . . Under section 523(a)(4), defalcation 'includes the innocent default of a fiduciary who fails to account fully for money received.'" *Lewis v. Scott (In re Lewis),* 97 F.3d 1182, 1186 (9th Cir.1996) (citations omitted).

Stephens argued that Bigelow committed defalcation by taking the retainer and then failing to provide promised services, and by violating several professional rules of ethics, including those requiring attorneys to communicate with, and provide an accounting to, their clients.

■■■ A debt is nondischargeable under § 523(a)(4) where "'1) an express trust existed, 2) the debt was caused by fraud or defalcation, and 3) the debtor acted as a fiduciary to the creditor at the time the debt was created.'" *Otto v. Niles (In re Niles),* 106 F.3d 1456, 1459 (9th Cir.1997) (quoting *Klingman v. Levinson,* 831 F.2d 1292, 1295 (7th Cir.1987)).

■■■ Federal bankruptcy law, rather than state law, determines whether there is a fiduciary relationship within the meaning of § 523(a)(4). *Blyler v. Hemmeter (In re Hemmeter),* 242 F.3d 1186, 1189 (9th Cir.2001). "The broad, general definition of fiduciary—a relationship involving confidence, trust, and good faith—is inapplicable." *Ragsdale v. Haller,* 780 F.2d 794, 796 (9th Cir.1986). The section applies only if an express trust pre-existed the wrongdoing that caused the debt. *Niles,* 106 F.3d at 1459. Moreover, "ordinary commercial relationships are excluded from the reach of section 523(a)(4)." *Lewis v. Short (In re Short),* 818 F.2d 693, 695 (9th Cir.1987).

■■■ An express or technical trust is generally created by an agreement between two parties to impose a trust relationship. "The general characteristics of an express trust are: (1) sufficient words to create a trust; (2) a definite subject; and (3) a certain and ascertained object or res." *Lovell v. Stanifer (In re Stanifer),* 236 B.R. 709, 714 (9th Cir. BAP 1999).

---

**10.** Except for his argument that fraud and embezzlement were conclusively determined by the state court, Stephens has not challenged the bankruptcy court's final ruling that he did not prove fraud or embezzlement at trial. Since we affirm the court's decision regarding issue preclusion, any remaining issues concerning these elements have therefore been waived. *Branam v. Crowder (In re Branam),* 226 B.R. 45, 55 (9th Cir. BAP 1998), *aff'd,* 205 F.3d 1350 (9th Cir.1999)(unpublished table decision).

"Fiduciary relationships imposed by statute may cause the debtor to be considered a fiduciary under § 523(a)(4)." *Hemmeter*, 242 F.3d at 1190. For a statute to create a technical trust, "[t]he statute must define the trust res, spell out the trustee's fiduciary duties[,] and impose a trust prior to and without reference to the wrong which created the debt." *Woodworking Enters., Inc. v. Baird (In re Baird)*, 114 B.R. 198, 202 (9th Cir. BAP 1990).

Therefore, state law is relevant to the inquiry. *Runnion v. Pedrazzini (In re Pedrazzini)*, 644 F.2d 756, 758 (9th Cir. 1981); *Stanifer*, 236 B.R. at 715. Accordingly, we must determine whether Washington statutory or case law with regard to the attorney-client relationship creates an express or technical trust within the meaning of § 523(a)(4).

In Washington, a fiduciary relationship arises as a matter of law between an attorney and his or her client. *Liebergesell v. Evans*, 93 Wash.2d 881, 890, 613 P.2d 1170, 1176 (1980). However, this is the broad fiduciary status, which does not fit the narrow federal definition. *See Lewis*, 97 F.3d at 1185.

In the Ninth Circuit, a general fiduciary attorney-client relationship may rise to the level of a fiduciary relationship for purposes of § 523(a)(4) if there are client trust funds involved. Washington's Rules of Professional Conduct ("RPC") require an attorney to preserve client funds in a trust account, and to account for such funds. RPC 1.14. *See Banks v. Gill Distrib. Centers, Inc. (In re Banks)*, 263 F.3d 862, 871 (9th Cir.2001) (holding that when the debtor-lawyer placed funds into his client trust account, he became his client's fiduciary for purposes of § 523(a)(4)); *Braud v. Stokes (In re Stokes)*, 142 B.R. 908, 910 n. 3 (Bankr.N.D.Cal.1992) (profes-

sional rule requiring client trust fund is the sole exception to the general statement that no California statute elevated the attorney-client relationship to trustee-beneficiary status). *Accord Watson v. Parker (In re Parker)*, 264 B.R. 685, 700 (10th Cir. BAP 2001) (holding that more than a general attorney-client relationship is required to establish a fiduciary relationship under discharge exception for fraud or defalcation while acting in fiduciary capacity). *Cf. Ducey v. Doherty (In re Ducey)*, 160 B.R. 465, 471–72 (Bankr.D.N.H.1993) (attorney's duty to segregate prepaid retainer, pending the bankruptcy court's approval of his employment as the debtor's attorney, created a fiduciary relationship within the meaning of § 523(a)(4)).

Bigelow testified that the fee he received from Stephens was *not* client trust funds, and thus he was not required to place the money into a trust account. The bankruptcy court then found that the fee arrangement was a "classic retainer."

A "classic" or "true" retainer is considered earned by the attorney upon receipt, whether or not services are actually provided. It simply secures an attorney's availability over a given period of time. *See* Wash. State Bar Ass'n, *Ethics Opinion 186* (1990); *S.E.C. v. Interlink Data Network of Los Angeles, Inc.*, 77 F.3d 1201, 1205 (9th Cir.1996) (citing *Baranowski v. State Bar*, 24 Cal.3d 153, 593 P.2d 613, 154 Cal.Rptr. 752 (1979)).

Washington law authorizes nonrefundable prepaid fees, provided that the client agrees to the arrangement. Wash. State Bar Ass'n, *supra* (citing with approval the distinction between "retainers" and "advance fee deposits" set forth in *Baranowski, supra* ); *See also* Anne I. Seidel, *Nonrefundable Retainers and Advanced-fee Deposits*, WASH. STATE BAR NEWS (September 1996). "Any fee paid to

a lawyer that the client has agreed is not refundable and is earned upon receipt for handling the client's case *shall not be deposited* in the lawyer's trust account." Wash. State Bar Ass'n, *supra* (emphasis supplied).[11]

Refundable fees, on the other hand, are usually "advance fee deposits." *Id.* The fee is a one-time or periodic advance payment for certain well-defined legal services and is *not earned* until the services are actually performed. These funds are deemed to be client trust funds until they have been earned by the lawyer, and any unused portion is refundable to the client. *Id.; Interlink Data Network*, 77 F.3d at 1205.

Stephens testified that Bigelow promised to perform certain services for the retainer, and alleged that Bigelow failed to account for the funds or detail the services provided. However, there was apparently no written fee agreement, which defined the nature of the fee arrangement, nor did Stephens provide any evidence that a written fee agreement was required. *See* RPC 1.5(c)(1) (requiring only a contingent fee agreement to be in writing). Stephens did not allege that the fee agreement was illegal or voidable. Nor did he testify, that he believed the retainer was refundable. His argument essentially was that the promised services (although pre-earned) were not performed,

and that he was entitled to damages in the amount of the retainer.[12]

The bankruptcy court instead found Bigelow's testimony credible that his promise to represent Stephens was the consideration for the prepaid fee. *See In re Nat'l Magazine Pub. Co.*, 172 B.R. 237, 240–41 (Bankr.N.D.Ohio 1994)(in a classic retainer situation, the consideration is the present promise of the attorney to represent the client on a given matter). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). We cannot find clear error in the bankruptcy court's determination that the $15,000 retainer was a nonrefundable prepaid retainer, and not client trust funds.

Since there were no trust funds involved in Bigelow's attorney-client relationship with Stephens, theirs was not a "fiduciary" relationship within the narrow meaning of § 523(a)(4). Nor could there have been, by definition, a "defalcation" without trust funds.

Stephens further maintains, however, that "any" fiduciary relationship can support a defalcation claim. He cites the *Lewis* definition, which states, in pertinent part: "Defalcation is defined as the 'misappropriation of trust funds or money held in *any* fiduciary capacity ....'" 97 F.3d at 1186 (emphasis supplied) (citations omitted). *See also Hemmeter*, 242 F.3d at

---

11. A nonrefundable retainer might be ordered refunded if circumstances warrant it, such as where a lawyer has done little or no work on the client's behalf. Seidel, *supra.* Such issue is not encompassed in this appeal, however.

Stephens' allegations that Bigelow failed to perform the promised services were insufficient to establish the requisite trust for § 523(a)(4), which is a trust established "before and without reference to the wrongdoing that caused the debt." *Lewis*, 97 F.3d at 1185 (citing *Ragsdale*, 780 F.2d at 796).

12. We decline to consider an exhibit attached to Stephens' Reply Brief which purports to prove that the retainer constituted client trust funds. This document, apparently, was not admitted as evidence at trial. *See* Transcript, 1/30/01, pp. 10–11, 28. The panel may not consider evidence that was not presented to the bankruptcy court, and thus is not part of the record on appeal. *Smyrnos v. Padilla (In re Padilla)*, 213 B.R. 349, 354 n. 3 (9th Cir. BAP 1997).

1190 (citing *Lewis*). Stephens takes this definition out of context. Both *Hemmeter* and *Lewis* define the term "fiduciary" narrowly.

We hold therefore that the bankruptcy court did not err by determining that the "fiduciary capacity" element of § 523(a)(4) was not proven, and therefore the judgment debt did not fall within the discharge exception of § 523(a)(4).

### CONCLUSION

Stephens' default judgment did not support issue preclusion in the nondischargeability proceeding because, under Washington law, the identical issues were not actually litigated or necessarily decided in the state court.

The attorney-client relationship, without any client trust funds, did not create a fiduciary relationship within the meaning of the discharge exception of § 523(a)(4).

The bankruptcy court's orders are **AFFIRMED**.