**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
### OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP No. CC-16-1412-LTaKu |
| ) | |
| JOHN EMIL ALLE and MARY REILLY) | Bk. No. 2:13-bk-38801-SK |
| ALLE, ) | |
| ) | Adv. No. 2:14-ap-01146-SK |
|         Debtors. ) | |
| _____) | |
| ) | |
| JOHN EMIL ALLE; MARY REILLY ) | |
| ALLE, ) | |
| ) | |
|         Appellants, ) | |
| ) | |
| v. ) | **M E M O R A N D U M**[*] |
| ) | |
| EARL E. GALES, JR.; STARLA ) | |
| GALES; ROBERT L. OPPENHEIM; ) | |
| LOIS J. OPPENHEIM, ) | |
| ) | |
|         Appellees. ) | |
| _____) | |

Argued and Submitted on June 22, 2017
at Pasadena, California

Filed - September 29, 2017

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Sandra R. Klein, Bankruptcy Judge, Presiding

_____

Appearances:    David Brian Lally argued for Appellants; Anthony J. Napolitano of Buchalter Law Firm argued for Appellees.

_____

Before: LAFFERTY, TAYLOR, and KURTZ, Bankruptcy Judges.

---

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

**INTRODUCTION**

This appeal challenges the bankruptcy court's determinations that certain claims are nondischargeable under § 523(a)(4)[1] as resulting from defalcation by a fiduciary and embezzlement. In brief, the bankruptcy court concluded that the defendant, who was the managing member of Shadow Mountain Properties, LLC ("SMP"), a California limited liability company ("LLC") in which plaintiffs were the only other members and which was formed for the express purpose of acquiring and operating for-profit real property, was a fiduciary to the plaintiffs via the application of California law governing LLCs. We agree with this conclusion.

The bankruptcy court also concluded that: (i) the defendant's failure to provide monthly bank statements and written accountings of the financial condition of the LLC and apparent misappropriation of SMP's funds were defalcations committed by defendant in his fiduciary capacity, and that SMP's loss of its real property through foreclosure supported nondischargeable claims against defendant of $800,000, their original investment; and (ii) SMP's loss of the real property also supported a claim for embezzlement against defendant, in the same damage amount of $800,000. We cannot agree with these conclusions.

As an initial matter, the bankruptcy court's ruling did not

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

contain a finding that defendant acted with the mental intent required to support a claim of defalcation. And the record does not support the bankruptcy court's ruling that the alleged defalcations – failure to report SMP's financial condition and misuse of funds – while certainly breaches of defendant's fiduciary duties, "caused" the damages here, as required by the law defining claims for defalcation under § 523(a)(4). Nor does the law support the bankruptcy court's finding that the defendant's misuse of funds adequately supported a judgment on the embezzlement claim in the amount of the plaintiffs' original investment. Indeed, neither the law nor the record support the conclusion that the proper measure of damages for the alleged defalcations or embezzlement was the amount of plaintiffs' initial investment in SMP.

Accordingly, we AFFIRM in part, REVERSE in part, VACATE the judgment, and REMAND.

## FACTS[2]

### A. Formation of Shadow Mountain Properties, LLC

In January 2006 Debtor John Alle and his wife Mary Alle, Earl and Starla Gales, and Robert and Lois Oppenheim formed SMP as a California LLC. Each couple owned a one-third interest in SMP. SMP was formed to purchase, operate, and manage a 12-unit residential income property on Shadow Mountain Drive in Palm Desert, California (the "Property"). Under the Operating Agreement ("OA") for SMP, Alle was designated managing member

---

[2]The facts are taken from the bankruptcy court's findings on summary judgment and are undisputed except as noted.

with direct and sole responsibility for the day-to-day management and operation of the Property.

Alle arranged for SMP to purchase the Property from the Humiston Family Trust ("HFT") for $1,600,000. The Gales and the Oppenheims (collectively, "Plaintiffs") each contributed $400,000 toward the acquisition of the Property, and HFT carried back a note and deed of trust for the $800,000 balance of the purchase price.

**B.     The Operating Agreement**

The OA provided that Alle, as managing member of SMP, would have full authority in connection with the management of the Property, including tenant relations and services, vendor relations, record-keeping, accounting, and cash flow management. For his services, Alle was to be paid a management fee of $300 per month. He was also entitled to "reimbursement for any and all out-of-pocket expenses paid or incurred by him in connection with the Property," except costs associated with the formation of the LLC and the purchase of the Property, as well as funds required for the operation of the Property through December 31, 2010.

The OA authorized the managing member to require members under appropriate circumstances to make capital contributions in ratio to their ownership interests. It further obligated the managing member to deposit partnership monies into the partnership bank account, to provide members with monthly financial reports and bank statements and annual financial statements, and to distribute profits on a monthly basis.

-4-

**C.    SMP's Cash Flow Problems**

Sometime during 2008, the Property began experiencing cash flow problems.  Over the next several years, Alle communicated several times with Gales and Oppenheim,[3] orally and in writing, to inform them that the Property was no longer making money and that he recommended they sell it.  Alle initially approached Gales and Oppenheim in 2008 about selling the Property, but they did not want to sell because, according to Alle, they "had no place else to put their money, . . . did not want to pay capital gains taxes . . . [and] they didn't want to give up their monthly/annual cash-on-cash returns of 9% per month."

Although Alle was communicating generally with Gales and Oppenheim regarding SMP's financial condition, sometime in 2010 Alle stopped sending monthly operating reports and bank statements to them.  Alle also fell behind on sending distribution checks.

Around 2010 to 2011, the Property's revenues decreased because tenants either moved out or were evicted.  Also, some units became uninhabitable due to tenant damage.  Alle requested that Plaintiffs pay expenses for plumbing, eviction fees, legal fees, insurance, taxes, trash, monthly maintenance, remedial expenses (such as paint, appliance repairs, broken fixtures, accounting, and bookkeeping), but Plaintiffs refused, insisting that Alle should pay for those expenses from his personal funds.

---

[3]References to "Gales" and "Oppenheim" are to Earl Gales and Robert Oppenheim, respectively.  Although their spouses were members of the LLC, they did not actively participate in the communications with Alle.

As noted, the OA provided that Alle was entitled to be reimbursed for his out-of-pocket expenses related to the Property.

Gales admitted in his deposition testimony that Alle told Plaintiffs that the Property was losing money and that they should sell it, but "we never received any documentation." Gales also testified that during 2010, in an attempt to determine the value of the Property, he personally investigated comparables near the Property.

Over the next several months, Gales and Oppenheim requested monthly reports and distribution checks; despite promises to do so, Alle did not provide any financial reports. Alle also continued to broach the subject of selling the Property, but Gales and Oppenheim were opposed to the idea.

Eventually, in July 2011, Alle met personally with Gales and Oppenheim at his office and warned them about the financial challenges facing SMP. The parties reviewed bills and rent rolls. Alle told Gales and Oppenheim that there was insufficient cash in the operating account to maintain the building properly, fix units for new tenants, and pay taxes and that, even if the Plaintiffs' distributions were reduced, SMP could not afford to maintain the Property.

**D. Alle uses SMP funds for his personal expenses.**

According to bank statements and check copies admitted in the bankruptcy court, during 2009, 2010, and 2011, Alle withdrew from the SMP bank account $44,529.84 in cashier's checks, $15,097.84 in unidentified checks, and $7,924.10 in cash withdrawals, along with $26,921.86 of expenditures that appeared

to be solely for Alle's personal expenses or expenses related to other properties he owned.

**E.    The Notice of Default**

In the meantime, SMP fell behind on payments on the debt secured by the Property.  As early as May 2009, HFT informed Alle that late payments on the note would no longer be tolerated.  Alle did not inform Plaintiffs of this default or his correspondence with the creditor.

Eventually, in August 2011, HFT recorded a Notice of Default and Election to Sell ("NOD"), which stated that the reinstatement amount was $12,478.33.  Alle admitted that he received a copy of the NOD shortly after it was recorded and asserted that the next day, he met with Gales and Oppenheim in his office and notified them that he had received the NOD.  Alle testified that at that meeting Gales and Oppenheim told Alle that they were unwilling to contribute further capital and were unwilling to accept less than $3,000 per month in distributions from SMP, and they instructed Alle to negotiate a settlement with HFT.  Gales and Oppenheim, however, asserted that Alle never informed them of the NOD.

According to Alle, a few weeks later, Alle met with Gales and Oppenheim again to discuss the foreclosure, delinquent property taxes, a cut-off notice from utilities, outstanding rents, and timing of distribution checks.

**F.    Alle's Attempts to Negotiate a Loan Modification**

Beginning in October 2011, HFT's attorney and Alle began negotiating a potential loan modification.  It is undisputed that Alle did not notify Plaintiffs of any of these

-7-

negotiations. The final modification proposed by HFT in December 2011 provided that HFT would cancel the trustee's sale on satisfaction of various conditions, including the payment by December 21 of $16,666.65, representing interest payments due on the note, along with legal fees and trustee's fees, reimbursement for insurance premium advances, payment of current property taxes, and proof of an installment agreement with Riverside County for the payment of property tax arrears. Alle did not accept this proposal but requested additional time to pay the property taxes in exchange for paying a higher interest rate. HFT rejected this proposal. The day before the scheduled foreclosure sale, Alle made one more modification proposal in which he requested a two-week continuance of the sale.

HFT did not respond to Alle's final proposal, and the foreclosure sale occurred on December 22, 2011. A trustee's deed for the Property was issued to HFT. According to Alle, he notified Plaintiffs orally of the completion of the sale, but Gales and Oppenheim testified that he did not.

**G. Post-Foreclosure Events**

Communications among Alle, Gales, and Oppenheim after the foreclosure sale belie Alle's assertion that he had informed Plaintiffs of the foreclosure sale. For example, about a week after the sale, Oppenheim wrote to Alle to inquire about the status of the financial information and documentation that Alle had promised in July. In response, Alle defended his management of the Property, pointed out that he had not taken any distributions from the Property other than $300 per month as a management fee during the first year of ownership, and noted

-8-

that he had complied with Gales' and Oppenheim's desire to keep the Property. Alle also promised that Gales and Oppenheim would not lose any money on their investments.

Oppenheim and Alle exchanged similar correspondence again in February 2012, with Oppenheim expressing concerns regarding Alle's failure to satisfy the OA's reporting requirements and Alle defending himself. This time Alle asserted that he had provided all requested information and promised to send a letter "with the game plan for the property."

According to Oppenheim, he discovered the foreclosure sale in April 2012 when he received an email from a real estate broker attaching a copy of the trustee's deed. Immediately thereafter, Oppenheim emailed Alle to ask for an explanation. According to Plaintiffs, Alle responded with an email stating that he had decided to sell the property to the lender due to unpaid property taxes. Alle promised that Plaintiffs would not lose any money and that he would continue making distributions over the next eight years. Alle contended that this email, which was presented as an exhibit to the declaration of Earl Gales in support of Plaintiffs' motion for summary judgment, was a "sham exhibit." In any event, the bankruptcy court made clear that this email was not material to its ruling.

In November 2012, Plaintiffs filed a complaint against the Alles in Los Angeles County Superior Court, asserting several causes of action, including breach of contract, breach of fiduciary duties, fraud, conversion, and for an accounting. Trial in the state court was set for December 2013.

**H.    The Alles' Bankruptcy Filing and the Adversary Proceeding**

A few days before the date set for trial in the state court, the Alles filed a chapter 7 bankruptcy petition, which stayed the state court litigation. Thereafter, Plaintiffs filed an adversary proceeding against Alle seeking a declaration of nondischargeability under (i) § 523(a)(4) for defalcation while acting in a fiduciary capacity and embezzlement and (ii) under § 523(a)(2)(A) for fraud. Plaintiffs sought to have declared nondischargeable their initial investments totaling $800,000 plus attorneys' fees and costs.[4]

In June 2016, Plaintiffs filed a motion for summary judgment ("MSJ") seeking entry of judgment on all causes of action. In support of the MSJ, Plaintiffs submitted declarations that attached, among other documentary evidence, copies of SMP's bank statements, cancelled checks, and supporting documents.

After hearing argument on the MSJ, the bankruptcy court granted Plaintiffs' MSJ with respect to Plaintiffs' claims under § 523(a)(4) for defalcation and embezzlement and denied the MSJ with respect to Plaintiffs' claim under § 523(a)(2)(A). The bankruptcy court awarded Plaintiffs' requested damages of $800,000 but did not articulate the basis for the award. The bankruptcy court declined to award damages on the $94,473.64 embezzlement claim because Plaintiffs had not requested those

[4]Alle was initially represented by counsel in this adversary proceeding. However, on June 10, 2016, Alle's attorney filed a Substitution of Attorney substituting Alle in pro per. Alle thereafter participated in the adversary proceeding without counsel until the filing of this appeal in November 2016.

damages in their MSJ. The bankruptcy court deferred the issue of attorneys' fees to permit Plaintiffs to file a motion substantiating the fees.

Thereafter, Plaintiffs dismissed their § 523(a)(2)(A) claim in its entirety and their § 523(a)(4) claim for embezzlement, but only with respect to the portion of damages attributable to Alle's misappropriation of funds from the SMP checking account. The bankruptcy court entered judgment on the § 523(a)(4) claims for $800,000 plus attorney's fees and costs and post-judgment interest. The bankruptcy court subsequently awarded Plaintiffs their attorneys' fees and costs in the amount of $351,730.02 and entered an amended judgment reflecting the fee award.

In the meantime, Alle filed a motion to vacate the bankruptcy court's ruling on summary judgment pursuant to Civil Rules 59(e) and 60(b), applicable in bankruptcy via Rules 9023 and 9024. He thereafter filed an amended motion to vacate, which included the amended judgment. After a hearing, the bankruptcy court denied the motion to vacate. Alle timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1. Did the bankruptcy court err in granting summary judgment on Plaintiff's § 523(a)(4) claim for defalcation while acting in a fiduciary capacity?

2. Did the bankruptcy court err in granting summary

-11-

judgment on Plaintiffs' § 523(a)(4) claim for embezzlement?

3. Did the bankruptcy court apply an incorrect legal standard in awarding damages based on Plaintiffs' initial investment in SMP?

**STANDARDS OF REVIEW**

We review de novo the bankruptcy court's decision to grant summary judgment. Plyam v. Precision Dev., LLC (In re Plyam), 530 B.R. 456, 461 (9th Cir. BAP 2015); Gertsch v. Johnson & Johnson Finance Corp. (In re Gertsch), 237 B.R. 160, 165 (9th Cir BAP 1999). Likewise, whether the bankruptcy court used the correct legal standard in computing damages is reviewed de novo. Neptune Orient Lines, Ltd. v. Burlington N. and Santa Fe Railway Co., 213 F.3d 1118, 1119 (9th Cir. 2000).

Under de novo review, we look at the matter anew, as if it had not been heard before, and as if no decision had been rendered previously, giving no deference to the bankruptcy court's determinations. Freeman v. DirecTV, Inc., 457 F.3d 1001, 1004 (9th Cir. 2006).

**DISCUSSION**

**A. The bankruptcy court erred in granting summary judgment on Plaintiff's claim under § 523(a)(4) for defalcation while acting in a fiduciary capacity.**

Section 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." To prevail under § 523(a)(4) for defalcation while acting in a fiduciary capacity, the plaintiff must show by a preponderance of the evidence that (1) an express trust existed; (2) the debt was caused by fraud or defalcation;

-12-

and (3) the debtor acted as a fiduciary to the creditor at the time the debt was created. Stephens v. Bigelow (In re Bigelow), 271 B.R. 178, 186 (9th Cir. BAP 2001) (citing Otto v. Niles (In re Niles), 106 F.3d 1456, 1459 (9th Cir. 1997), abrogated on other grounds, Bullock v. BankChampaign, N.A., 133 S. Ct. 1754 (2013)).

> Whether a relationship is a "fiduciary" one within the meaning of section 523(a)(4) is a question of federal law. The broad, general definition of "fiduciary" is inapplicable in the dischargeability context. Instead, the fiduciary relationship must be one arising from an express or technical trust that was imposed before and without reference to the wrongdoing that caused the debt.

Lewis v. Scott (In re Lewis), 97 F.3d 1182, 1185 (9th Cir. 1996) (citing Ragsdale v. Haller, 780 F.2d 794, 795 (9th Cir. 1986)).

The bankruptcy court did not err in concluding that a qualifying trust under § 523(a)(4) existed and that Alle acted as a fiduciary at the time the Property was lost to foreclosure. The bankruptcy court's findings, however, were inadequate to support the conclusion that there was a defalcation: the bankruptcy court made neither a sufficient finding that Alle's state of mind satisfied the applicable standard, nor an explicit finding that Alle's conduct caused Plaintiffs' damages.

**1. The bankruptcy court did not err in concluding that a trust existed for purposes of § 523(a)(4).**

For purposes of § 523(a)(4), a trust may be created by statute or by agreement. In re Bigelow, 271 B.R. at 186; Lovell v. Stanifer (In re Stanifer), 236 B.R. 709, 715 (9th Cir. BAP 1999). State law is relevant to determine whether there is an express or technical trust within the meaning of § 523(a)(4).

-13-

Id. at 714.

For a technical trust to be created by statute, "[t]he statute must define the trust res, spell out the trustee's fiduciary duties[,] and impose a trust prior to and without reference to the wrong which created the debt." Id. at 715 (citation omitted). Under California law, creation of an express trust by agreement requires (1) sufficient words to create a trust; (2) a definite subject; and (3) a certain and ascertained object or res. Id. at 714.

In the OA, the parties agreed to form and become members of SMP and that Alle would be the managing member. The OA further provided that SMP's purpose was to "own, operate, and manage the . . . Property, and to do all things incidental to or in furtherance of said purpose." The OA also specified that Alle was "responsible for the management and operation of the Property" and that he had "full authority in connection with the Property." Further, the OA authorized Alle, as managing member, to make withdrawals from the SMP bank account. The OA required Alle to provide financial reports and to distribute the profits to members on a monthly basis.

Contrary to the bankruptcy court's finding, the OA by itself did not create an express trust under California law because it did not include language expressing an intent to create a trust. See Lonely Maiden Prods., LLC v. GoldenTree Asset Mgmt, LP, 135 Cal. Rptr. 3d 69, 78, 201 Cal. App. 4th 368, 379 (2011). It is undisputed, however, that the OA created a limited liability company and spelled out the obligations of its members. Under California law in effect when SMP was formed, the fiduciary

-14-

duties a manager owed to a limited liability company and its members were those of a partner to a partnership and the other partners. Cal. Corp. Code § 17153.[5] And, under California partnership law, partners are trustees over the assets of the partnership; thus, those partners are fiduciaries under § 523(a)(4). Ragsdale v. Haller, 780 F.2d 794, 796-97 (9th Cir. 1986). Accordingly, when considered in light of California law, a technical trust was created for purposes of § 523(a)(4), while the OA specified the trust res, here, the Property and its profits and defined the managing partner's fiduciary duties.

On appeal, Alle seems to dispute that the requirement of a "certain and ascertained res" was met because "while there was real property involved, the issue of rents was a moving target and thus the "res" was not defined for purposes of a fiduciary relationship. Although this argument is not convincing, it highlights that the bankruptcy court did not make clear what the defalcation was with respect to the Property; we address that issue below.

**2.    The bankruptcy court did not err in finding that Alle acted as a fiduciary at the time the debt was created.**

As discussed above, California law imposed fiduciary duties upon Alle as managing member of SMP. Alle was acting as a fiduciary with respect to the trust assets during all relevant times.

---

[5]Cal. Civ. Code § 17704.09, which became effective on January 1, 2014, addresses the fiduciary duties of members of limited liability companies.

-15-

**3. The bankruptcy court erred in concluding that the debt was caused by defalcation under § 523(a)(4).**

Defalcation is the misappropriation of trust funds or money held in any fiduciary capacity.[6] In re Lewis, 97 F.3d at 1186 (9th Cir. 1996). Defalcation also includes the failure by a fiduciary to account for money or property that has been entrusted to him. Pemstein v. Pemstein (In re Pemstein), 492 B.R. 274, 282 (9th Cir. BAP 2013). Once a creditor has shown that the debtor is a fiduciary to whom funds have been entrusted, the burden shifts to the fiduciary to account fully for all funds received. In re Niles, 106 F.3d at 1462. Additionally, a defalcation under § 523(a)(4) requires a culpable state of mind involving either bad faith, moral turpitude or an intentional wrong. Bullock, 133 S. Ct. at 1759. Thus, in order to find a defendant liable for a defalcation under § 523(a)(4), in addition to finding that he occupied the requisite fiduciary relationship at the time of the alleged wrongdoing (which we agree was established here), the bankruptcy court must also find that any misappropriation or failure to account was done with the requisite mental state and was the cause of the damage to the plaintiff.

**a. Intent**

The bankruptcy court did not make any finding that Alle possessed the requisite state of mind to support liability under § 523(a)(4). At a minimum, the court needed to find that Alle

---

[6]"Misappropriation" is "the application of another's property or money dishonestly to one's own use." Black's Law Dictionary (10th ed. 2014).

-16-

committed an intentional wrong, which includes

> not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. . . . we consider conduct as equivalent if the fiduciary consciously disregards (or is willfully blind to) a substantial and unjustifiable risk that his conduct will turn out to violate a fiduciary duty. That risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.

Bullock, 133 S. Ct. at 1759-60 (internal quotations and citations omitted).

Although the bankruptcy court recited the applicable standard – that defalcation requires a culpable state of mind involving knowledge of, or gross recklessness with respect to, the improper nature of the conduct – its only reference to Alle's intent was to note that "he must have known he was required to provide [financial information] to Plaintiffs." The bankruptcy court needed to have found that the debt resulted from (i) acts of bad faith, moral turpitude, or other immoral conduct; (ii) intentional improper conduct or criminally reckless conduct; or (iii) conscious disregard or willful blindness to a substantial and unjustifiable risk. Heers v. Parsons (In re Heers), 529 B.R. 734, 742-43 (9th Cir. BAP 2015). The court made no findings that would satisfy this standard. Nor is it clear whether the bankruptcy court could have made such findings on summary judgment, see Provenz v. Miller, 102 F.3d 1478, 1489 (9th Cir. 1996) (scienter should not ordinarily be determined on summary judgment), but we leave such determinations to the bankruptcy court on remand.

-17-

### b. Causation

One of the required elements for a defalcation claim is that the debt was "caused by" the fraud or defalcation. In re Bigelow, 271 B.R. at 186. In circumstances where the trust res consists of funds that are to be invested by a fiduciary, causation is usually easy to ascertain. To the extent the funds are missing or dissipated via improvident investments, coupled with the requisite mental state (post-Bullock), numerous opinions confirm that such conduct can support a claim of defalcation. See, e.g., In re Lewis, 97 F.3d at 1187 (commingling partner's investment with other funds and failure to provide partner with complete accounting). By comparison to the facts presented in this case, these "funds are missing" fact patterns generally do not require extensive analysis on the question of causation. If cash entrusted to a fiduciary is missing from where it is supposed to be, the inherent cause of its absence is usually the fiduciary having put it somewhere else. But where assets other than funds are at issue, causation needs to be more fully explained.[7]

---

[7]Certainly, assets other than funds may constitute a trust res subject to defalcation under § 523(a)(4): See, e.g., Cora v. Jahrling (In re Jahrling), 816 F.3d 921 (7th Cir. 2016) (attorney's breach of fiduciary duty in selling elderly client's real property at a price far below market value and failing to include in the closing documents the retention of a life estate was a defalcation under § 523(a)(4)); Baker v. Friedman (In re Friedman), 298 B.R. 487 (Bankr. D. Mass. 2003) (partner's failure to disclose to other partner impending cancellation of life insurance policies owned by partnership for nonpayment constituted a defalcation); Brawer v. Gelman (In re Gelman), 47 B.R. 735 (Bankr. S.D. Fla. 1985) (attorney's failure to
(continued...)

-18-

Plaintiffs listed in their MSJ several alleged breaches of fiduciary duties by Alle: failure to remain current with mortgage and property tax payments and to cure defaults on those obligations; failure to provide monthly financial reports and bank statements; failure to make complete and timely tax and governmental filings on behalf of SMP; failure to advance funds required for the operation of the Property through 2010; and failure to notify Plaintiffs of the NOD and the impending foreclosure sale.

Although the bankruptcy court stated in its ruling that it agreed with Plaintiffs that Alle's conduct resulted in the debt owed to Plaintiffs – seemingly agreeing that all of the identified conduct was the defalcation – the bankruptcy court explicitly found that Alle's defalcation consisted only of (1) his failure to properly account for the Property's income and expenses, and (2) his misappropriation of SMP's funds. The bankruptcy court did **not** make an explicit finding that Alle's failure to inform Plaintiffs of the impending foreclosure was a defalcation, probably because there was conflicting evidence as to whether Alle informed Plaintiffs of the impending foreclosure in time for them to take any action.[8]

_____

[7](...continued)
disclose his disbarment and his subsequent abandonment of client's claim was a defalcation).

[8]Alle testified in his declaration that he informed the Plaintiffs of the NOD shortly after he received it and discussed the impending foreclosure with them at meetings in August and September of 2011. Plaintiffs denied this, and subsequent correspondence between the parties, which did not mention the
(continued...)

The evidence on summary judgment supported a finding that Alle breached his fiduciary duties as managing member of SMP by failing to provide financial reports and bank statements after 2009. But the only evidence presented with respect to causation was Gales' and Oppenheim's declaration testimony that "[b]ecause Alle never provided us with any information regarding the default on the Humiston loan, the pending foreclosure sale and the proposed loan modification agreement, [we] were never given any opportunity to cure defaults or otherwise save our investments in Shadow Mountain or the Property." Notably, that testimony does not mention as a cause Alle's failure to provide monthly financial statements or bank statements or his misappropriation of funds from the SMP checking account. Thus, strictly speaking, the record does not support a finding that the identified defalcations caused the damages to Plaintiffs.

And more importantly, the bankruptcy court did not explain how Alle's identified breaches of fiduciary duties – the failure to provide monthly reports and bank statements and the diversion of SMP's funds – was the cause of Plaintiffs' damages. Such an explanation would necessarily have required the court to identify precisely what those damages were, as the two issues are

---

[8](...continued)
foreclosure, seemed to support Plaintiffs' version of events. There is no evidence in the record that Alle informed Plaintiffs of the specific date of the foreclosure sale, and it is undisputed that Alle did not inform Plaintiffs of his last-minute attempts to negotiate a modification of the note.

intertwined.[9] It is undisputed that the funds contributed by Plaintiffs were invested as agreed by the parties. It appears, then, that a defalcation could have occurred only with respect to the LLC's assets: the Property and its profits. But the bankruptcy court did not articulate the connection between Alle's conduct and the ultimate loss of SMP's primary asset.

In sum, the bankruptcy court did not err in finding that a qualifying trust existed or that Alle was acting as a fiduciary when he failed to provide the required financial information to Plaintiffs or when he used SMP's funds for non-SMP expenses. The bankruptcy court erred, however, in failing to make the necessary findings regarding the state of mind element of a defalcation under § 523(a)(4) and in implicitly finding, without explanation, that Alle's identified fiduciary breaches were the cause of the damage to Plaintiffs.

**B.    The bankruptcy court erred in entering judgment for Plaintiffs on their embezzlement claim.**

The bankruptcy court also granted summary judgment to Plaintiffs for embezzlement under § 523(a)(4) but did not award damages in the amount of the misappropriated funds because Plaintiffs' motion had not put Alle on notice that Plaintiffs sought additional damages for that claim. Thereafter, Plaintiffs dismissed the embezzlement claim in part. Their notice of dismissal stated that Plaintiffs were **not** dismissing the embezzlement claim to the extent it formed a basis for the

---

[9]As discussed in Section C below, neither the parties nor the bankruptcy court specified the basis for the damages award.

-21-

$800,000 in damages. The judgment awarded Plaintiffs $800,000 on the embezzlement claim.

Section 523(a)(4) excepts from discharge debts for embezzlement. A fiduciary relationship is not a predicate for recovery under this theory. Transamerica Comm. Fin. Corp. v. Littleton (In re Littleton), 942 F.2d 551, 555 (9th Cir. 1991). Under federal law, embezzlement is defined as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." Id. (citing Moore v. United States, 160 U.S. 268, 269 (1885)). To prevail on an embezzlement claim under § 523(a)(4), a creditor must prove three elements: (1) property rightfully in the possession of a nonowner; (2) the nonowner's appropriation of the property to a use other than that for which it was entrusted; and (3) circumstances indicating fraud. Id.

The bankruptcy court found that the foregoing elements had been proven, but it did not award damages in the amount of the embezzled funds. And it is not clear how the embezzlement claim could have been the basis for the $800,000 damage award. See Patel v. Patel (In re Patel), 551 B.R. 488, 496 (Bankr. D.N.M. 2016) (damages for embezzlement are generally equal to the value of the misappropriated property); Telmark, LLC v. Booher (In re Booher), 284 B.R. 191, 214 (Bankr. W.D. Pa. 2002) (same). Accordingly, the bankruptcy court erred in entering judgment on Plaintiffs' embezzlement claim.

**C.    The bankruptcy court did not make sufficient findings to support the amount of damages awarded.**

In their MSJ, Plaintiffs requested damages of $800,000,

representing Plaintiffs' total investment in SMP, but did not state the legal basis for the amount sought. The bankruptcy court seemed to accept this number as the proper measure of damages without any analysis.

The Code does not define the appropriate measure of damages for defalcation under § 523(a)(4); thus the bankruptcy court should look to state law. See Light v. Whittington (In re Whittington), 530 B.R. 360, 407-08 (Bankr. W.D. Tex. 2014) (because there was no pre-existing judgment on plaintiff's claims, bankruptcy court determined defendant's nondischargeable liability arising from fraud and breach of fiduciary duty by looking to Texas state law) (citing Morrison v. W. Builders of Amarillo, Inc. (In re Morrison), 555 F.3d 473, 479 (5th Cir. 2009)).

As noted, it does not appear that Plaintiffs' initial investment was the proper measure of damages. See Destino v. Bockting, 2012 WL 258408, at *2-3, 467 Fed. App'x 678, 680-81 (9th Cir. Jan. 30, 2012) (holding that bankruptcy court erred in awarding damages for defalcation in the total amount of invested funds where some of those funds were spent in accordance with the parties' agreement, and remanding for recalculation of damages that plaintiff could prove were misapplied); see also In re Friedman, 298 B.R. at 505 (where debtor's defalcation involved partnership assets and not the creditor's initial investment in the partnership, the proper measure of damages was the value of what the plaintiff would have received had the contract been performed); and Int'l Fid. Ins. Co. v. Fox (In re Fox), 357 B.R. 770, 778 (Bankr. E.D. Ark. 2006) (where

-23-

misappropriation forms the basis for a defalcation claim, only that portion of the trust res inappropriately expended is nondischargeable, citing <u>Matter of Thomas</u>, 729 F.2d 502 (7th Cir. 1984)).

Thus, on remand, the bankruptcy court should make findings as to the proper measure of damages under California law and the facts of this case.

**D.    The bankruptcy court's ruling on the motion to vacate is moot.**

Because we are vacating and remanding the bankruptcy court's judgment, we need not address whether the bankruptcy court abused its discretion in denying Alle's motion to vacate.

**CONCLUSION**

For the reasons set forth above, although the bankruptcy court did not err in finding that a qualifying trust existed, that Alle was acting as a fiduciary, and that he breached his fiduciary duties under the OA, it erred in granting summary judgment to Plaintiffs on their § 523(a)(4) claim.  We therefore AFFIRM in part, REVERSE in part, VACATE, and REMAND for further proceedings in accordance with this disposition.